# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 10, 2009

Charles R. Fulbruge III
Clerk

No. 08-50100

DOUGLAS ALAN LITTLE, On Behalf of Themselves and All Others Similarly Situated; LITTLE, ROBERTS & COMPANY, PC, On Behalf of Themselves and All Others Similarly Situated

Plaintiffs - Appellants-Cross-Appellees

v.

KPMG LLP; FRANKLIN W MARESH; DAVID J KIRKPATRICK; ROBERT W LAMBERT; JERRY WAYNE CLAIBORNE; JAMES TERRY STRANGE, JR; JACK TURNER TAYLOR, JR; RICHARD E SEXTON; SARA LOU BROWN; LARRY EVANS

Defendants - Appellees-Cross-Appellants

No. 08-50104

DESERT EAGLE DISTRIBUTING OF EL PASO INC

Plaintiff - Appellant-Cross-Appellee

NC VENTURES INC; ST JAMES CAPITAL PARTNERS LP

Intervenor Plaintiffs - Appellants-Cross-Appellees

v.

KPMG LLP; FRANKLIN W MARESH; DAVID J KIRKPATRICK; ROBERT W LAMBERT; JERRY WAYNE CLAIBORNE; JAMES TERRY STRANGE, JR; JACK TURNER TAYLOR, JR; RICHARD E SEXTON; SARA LOU BROWN; LARRY EVANS

Defendants - Appellees-Cross-Appellants

---

Appeals from the United States District Court
for the Western District of Texas

---

Before JOLLY, DeMOSS, and PRADO, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

John Hudson ("Hudson") was a partner at KPMG LLP from 1984 until 1999, practicing public accountancy in Texas. He did not, however, have the required Texas license to practice. It is alleged that KPMG LLP's Texas license and registration were therefore improper; its participation in Texas's public-accountancy market, unlawful. It is further alleged that KPMG LLP managed to maintain its Texas license and registration only by concealing Hudson's unlicensed practice from the relevant authorities.

In 2005, a public accountant and a public-accountancy firm in Texas brought a putative class action against KPMG LLP and several of its partners (collectively, "KPMG"). The putative class (the "competitors") contends that, from 1984 until 1999, its members lost business to KPMG when KPMG participated in Texas's public-accountancy market unlawfully.

A second putative class action was brought against KPMG by a group of its Texas clients. This putative class (the "clients") contends that, from 1984 until 1999, KPMG misrepresented the nature of its public-accountancy services and overcharged for them unlawfully. Over KPMG's opposition, NC Ventures Inc. ("NC Ventures") and St. James Capital Partners LP ("St. James") intervened as plaintiffs.

The district court dismissed both actions on the pleadings. The court held that the competitors' claim of injury is too speculative to confer Article III standing or to give rise to a claim for which relief can be granted. It held that

2

the clients have failed to plead actual, concrete injury sufficient to give rise to a claim for which relief can be granted. The putative classes appeal from the dismissals. The clients also appeal from a ruling to strike two exhibits that they attached to their second-amended complaint. KPMG cross-appeals from ancillary rulings in both actions.

We have consolidated the actions for appeal. We hold that, as the district court decided, the competitors' claim of injury is too speculative to confer Article III standing. The clients have failed to plead actual, concrete injury sufficient to survive dismissal under Federal Rule of Civil Procedure 12(b)(6). We affirm.

I.

The putative class actions arise from the same factual allegations. Because these appeals are from dismissals on the actions' pleadings, we must assume the allegations are true and describe them as if they were fact.

The Texas Public Accountancy Act ("TPAA"), as in force from 1984 until 1999, required firms of certified public accountants to register annually with the Texas State Board of Public Accountancy (the "State Board"). A firm did not qualify to register unless each of its partners practicing public accountancy in Texas held a Texas public-accountancy license and certification. The State Board enforced this requirement by having firms annually submit, under oath, the name and Texas license number of each partner who practiced public accountancy in Texas.

Registration, in turn, was a statutory prerequisite to obtain a firm license. The TPAA mandated that the State Board revoke the registration and license of any firm not meeting each qualification for registration.

John Hudson practiced public accountancy as a partner in KPMG's Houston office from January 1, 1984, until January 1, 1999. Hudson held a New York public-accountancy license, but he never held a Texas public-accountancy

license. Despite Hudson's unlicensed practice, KPMG registered and received a license to practice public accountancy in Texas every year from 1984 until 1999. KPMG did so by concealing Hudson's lack of a Texas license from the State Board: In 1984 and 1985, KPMG omitted Hudson's name from the list of Texas partners that it submitted to the State Board as part of the annual registration process. In 1986, KPMG included Hudson's name but provided his New York license number instead of a Texas license number. The State Board caught this anomaly and brought it to KPMG's attention, which responded that Hudson was "in the process of applying for his Texas license." KPMG again omitted Hudson's name from its list of Texas partners each year between 1987 and 1999. Hudson retired effective January 1, 1999.

Despite KPMG's representation in 1986 that Hudson was in the process of applying for a Texas public-accountancy license, Hudson did not actually apply for a Texas license until 1992. He applied at the direction of Franklin Maresh ("Maresh"), the managing partner of KPMG's Houston office. Three of Hudson's coworkers in that office—defendants Richard Sexton, Larry Evans, and Sara Lou Brown—signed Hudson's application as character witnesses. Another of Hudson's coworkers, defendant Jerry Claiborne, certified on behalf of KPMG that Hudson's statements in his application were true and correct. Each coworker knew that Hudson had engaged in the unlicensed practice of public accountancy since 1984. Each coworker also knew that Hudson's application contained false statements. The State Board denied Hudson's application, and Hudson never reapplied.

From 1993 until 1999, Maresh furthered KPMG's concealment of Hudson's unlicensed practice even though Maresh had retired from KPMG. In 1993, Maresh joined the State Board's Major Cases Committee, which was the State Board committee that would have been charged with investigating KPMG's license and registration. Maresh continued to work for the State Board, and he

became the State Board's Chairman in 1996. He personally knew of Hudson's unlicensed public-accountancy practice (and, consequently, of KPMG's ineligibility to register in Texas), but he never disclosed these facts to the State Board. The State Board never investigated Hudson's unlicensed public-accountancy practice, and it never investigated KPMG's eligibility to register.

At all times from 1984 until 1999, KPMG represented to prospective and actual clients that it was a partnership registered and licensed to practice public accountancy in Texas. This representation was true: at all times material to these appeals, KPMG *was* registered and licensed to practice public accountancy in Texas. KPMG did not disclose, however, that it had obtained the registration and license fraudulently, or that it was unqualified under the TPAA to hold a firm registration or license. Hudson's unlicensed practice came to light only in 2005, well after KPMG's annual licenses and registrations for the years 1984 through 1999 had expired.

Again, these allegations are taken from the putative classes' relevant pleadings. We must accept them as true for our purposes today.

## II.

The two putative classes raise distinct legal arguments, and the two actions' procedural histories differ. We first describe the competitors' legal arguments and their action's procedural history. We next describe the clients' legal arguments and their action's procedural history.

## A.

In the competitors' action, the live pleading is the original complaint. The competitors' legal argument is as follows. From 1984 until 1999, KPMG participated in Texas's public-accountancy market—and obtained clients who otherwise would have hired the competitors—unlawfully. KPMG's participation in Texas's public-accountancy market was unlawful because Hudson's unlicensed public-accountancy practice caused KPMG to be ineligible to register in Texas.

Had the State Board learned of KPMG's ineligibility to register, it would have revoked KPMG's registration and license to practice public accountancy in Texas. *See* TEX. OCC. CODE § 901.504(2) (1999) ("[T]he board . . . shall revoke the registration and license of a . . . partnership . . . that does not meet each qualification for registration prescribed by this chapter."). Further, the competitors allege, KPMG managed to obtain 1984-1999 registrations and licenses only through acts of concealment and conspiracy. They contend that this conduct constituted constructive fraud, conspiracy to commit constructive fraud, tortious interference with prospective contractual relations, conspiracy to commit tortious interference with prospective contractual relations, Lanham Act violations, Racketeer Influenced and Corrupt Organizations Act ("RICO") violations, and Sherman Act violations. The competitors seek the disgorgement of all revenues or profits that KPMG generated through its Texas operations from 1984 until 1999, as well as punitive damages, statutory damages (including attorney's fees), and costs.

KPMG (on behalf of all defendants except Maresh) moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). KPMG argued that: (A) the State Board possesses exclusive jurisdiction over this dispute; (B) the competitors' claim of injury is too speculative to confer Article III standing; (C) the competitors' claim of injury is too speculative to give rise to a claim for which relief can be granted; and (D) injury aside, the competitors fail for various reasons to state a claim for which relief can be granted under the legal theories that they assert. The competitors responded to KPMG's motion to dismiss, KPMG replied, and the competitors sur-replied.

Maresh separately filed a motion to dismiss, in which he adopted by reference the other defendants' arguments for dismissal. Maresh also filed a motion for partial summary judgment on the bases of absolute and qualified immunity. The competitors opposed these motions.

The district court held that the competitors' claim of injury is too speculative to confer Article III standing or to give rise to a claim for which relief can be granted. It dismissed the action under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, under Federal Rule of Civil Procedure 12(b)(6).

Having dismissed the action on these grounds, the district court resolved only part of KPMG's alternative arguments. It concluded that the State Board does not possess exclusive jurisdiction over the action and that the competitors pleaded fraud with enough particularity to satisfy Federal Rule of Civil Procedure 9(b). The district court did not consider other of the parties' arguments, such as whether the competitors sufficiently pleaded a conspiracy or a RICO enterprise. The district court dismissed Maresh's motion for partial summary judgment as moot. The competitors timely appealed from the action's dismissal. KPMG timely cross-appealed (on behalf of all defendants, including Maresh). KPMG challenges the grounds of the dismissal, urging that the State Board possesses exclusive jurisdiction over this dispute.[1]

### B.

In the clients' action, the live pleading is the second-amended complaint. In the original complaint, the putative class's named plaintiffs were NAB Asset Venture I L.P. ("NAB I"), NAB Asset Venture II L.P. ("NAB II"), NAB Asset Venture III L.P. ("NAB III"), NAB Asset Venture IV L.P. ("NAB IV"), and Asset Collectors L.P. ("Asset Collectors"). In the first-amended complaint, Desert Eagle Distributing of El Paso, Inc. ("Desert Eagle") replaced NAB II, NAB III, and NAB IV as named plaintiff. The second-amended complaint reflected

---

[1] KPMG gave notice of challenging the denial of Maresh's motion for partial summary judgment, but it did not pursue the argument in its appellate briefs. "Because arguments not asserted in an original brief are generally deemed to be abandoned, we will not address this argument." *LaBarge Pipe & Steel Co. v. First Bank*, 550 F.3d 442, 449 n.5 (5th Cir. 2008).

changes to the clients' causes of action and relief sought. It continued to name as plaintiffs NAB I, Asset Collectors, and Desert Eagle.

When NAB I, Asset Collectors, and Desert Eagle filed the second-amended complaint, NC Ventures and St. James moved to intervene as plaintiffs. KPMG opposed the motion, and it also alleged that NAB I and Asset Collectors lack standing. The district court granted the motion to intervene. The parties stipulated to the dismissal of NAB I and Asset Collectors. The action's current plaintiffs are Desert Eagle, NC Ventures, and St. James.

The clients' substantive legal argument proceeds as follows. From 1984 until 1999, KPMG represented that it was properly registered and licensed to practice public accountancy in Texas. As KPMG's partners knew, this representation was false. KPMG did not qualify to register in Texas because Hudson practiced public accountancy there without a license and certification. As a consequence of KPMG misrepresentations, the clients bargained for and paid for the services of a properly-registered accounting firm. They instead received the services of an accounting firm whose registration and license were subject to mandatory revocation.

The market price for a properly-registered accountancy firm's services, the clients allege, exceeds the market price for the identical services of a firm whose registration and license are subject to mandatory revocation. This is so because the latter firm's services carry an element of risk: if the State Board revokes the firm's registration and license, the client: (A) must incur additional expenses to have the accounting work checked by a licensed accountant or accountancy firm and (B) may incur civil liability for sharing the firm's work with third parties while representing the work as having been performed by a firm that was registered and licensed.

The clients thus assert that, because of KPMG's misrepresentations, they bargained and paid for risk-free accounting services but instead received less-

8

valuable, risk-bearing accounting services. They contend that KPMG's conduct toward them constituted actual and constructive fraud, breach of fiduciary duty, simple or gross negligence, negligent misrepresentation, breach of contract, breach of warranty, Texas Deceptive Trade Practices Act violations, and RICO violations. They seek to recover the services' overcharge (measured as benefit-of-the-bargain damages, out-of-pocket damages, lost profits, equitable disgorgement, or pecuniary damages), statutory damages (including attorney's fees), and punitive damages. To support their assertions, the clients attached to their second-amended complaint an affidavit of Wanda Lorenz (a former State Board member) and a declaration of Herbert Warner (a former KPMG partner).

On behalf of all defendants except Maresh, KPMG moved to dismiss the clients' action under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b). KPMG argued in favor of dismissal that: (A) the State Board possesses exclusive jurisdiction over this dispute; (B) the clients' action is an impermissible collateral attack of the State Board's 1984-1999 registration decisions; (C) the clients lack standing to enforce the TPAA through a private right of action for damages; (D) the clients failed to plead actual, concrete injury; and (E) injury aside, the clients otherwise fail to state a claim for which relief can be granted under the particular legal theories that they assert.

The clients responded to the motion to dismiss, KPMG replied, and the clients sur-replied. Maresh separately filed a motion to dismiss, in which he adopted by reference the other defendants' arguments in favor of dismissal. Maresh also filed a motion for partial summary judgment on the bases of absolute and qualified immunity. The clients opposed these motions.

The district court rejected KPMG's arguments that the State Board possesses exclusive jurisdiction over this dispute, that the action is a collateral attack of the State Board's registration and licensing decisions, and that the clients lack standing because the TPAA does not create a private right of action

for damages. It held, however, that the clients failed to plead actual, concrete injury sufficient to give rise to a claim for which relief can be granted. It dismissed the action under Federal Rule of Civil Procedure 12(b)(6). Having dismissed the action on these grounds, the district court denied KPMG's motion to dismiss insofar as KPMG sought dismissal under Federal Rule of Civil Procedure 9(b); the clients' allegations were particular enough to satisfy that rule.

KPMG separately moved to strike the Lorenz and Warner exhibits. It contended that the exhibits constituted expert-opinion testimony and that expert-opinion testimony is inappropriate at an action's pleading stage. The clients opposed the motion, characterizing Lorenz and Warner as "uniquely qualified" experts but also contending that the exhibits contained non-expert factual testimony. That testimony, the clients asserted, was not additive of the complaint's factual allegations (in the sense of providing fresh allegations) but instead merely gave context to the complaint's allegations.

The district court granted KPMG's motion to strike the Lorenz and Warner exhibits. It concluded that the exhibits contained expert testimony and that any non-opinion testimony that they contained was inextricably intertwined with the expert testimony. Under this court's precedents, the district court held, expert testimony is inappropriate at the pleading stage. It ordered the Lorenz and Warner exhibits stricken from the second-amended complaint.

The clients have timely appealed from the action's dismissal and from the partial grant of KPMG's motion to strike the Lorenz and Warner exhibits. KPMG (on behalf of all defendants, including Maresh) timely cross-appealed from the grant of NC Ventures's and St. James's motion to intervene. KPMG also cross-appealed from the grounds of dismissal and, on cross-appeal, raises a new argument opposing federal-court jurisdiction: the clients' claim of injury is too speculative to confer Article III standing.

III.

We have appellate jurisdiction under 28 U.S.C. § 1291. We first consider the cross-appeals from the competitors' action. We next consider the cross-appeals from the clients' action.

A.

We review a dismissal for lack of standing *de novo*. *E.g.*, *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 542 (5th Cir. 2008).[2] "Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). These elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan*, 504 U.S. at 560-61). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. At the pleading stage, allegations of injury are liberally construed. *See id.* ("[O]n a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim' [of standing]." (quoting *Lujan v. Nat'l Wildlife Fed.*, 491 U.S. 871, 889 (1990))). However, allegations of injury that is merely conjectural or hypothetical do not suffice to confer standing. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344-46, 350 (2006). A claim of injury generally is too conjectural or hypothetical to confer

---

[2] The competitors contend that the jurisdictional question is factual: "KPMG based its motion to dismiss on a challenge to a fact—whether Little suffered a concrete, non-speculative injury in that KPMG took business from him while unlawfully competing against him in El Paso—that is central to the merits of Little's substantive causes of action." This contention is without merit; whether Little suffered injury that is concrete and non-speculative presents a legal question. *See, e.g.*, *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37, 46 (1976) (vacating denial of motion to dismiss for lack of standing, and remanding with instructions to dismiss, because the alleged injury was insufficiently concrete and non-speculative).

standing when the injury's existence depends on the decisions of third parties not before the court. *See, e.g., Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976) ("[I]njury at the hands of a hospital is insufficient by itself to establish a case or controversy in the context of this suit, for no hospital is a defendant.").

Here, the competitors' claim of injury is lost business: KPMG provided public-accountancy services to Texas clients who, the competitors assert, would have hired a putative class member in KPMG's absence from the market. This claim of injury requires the following chain of causation. First, had KPMG's Texas registration been revoked, KPMG's Texas clients would have sought to replace KPMG. Second, the clients would have replaced KPMG with one or more of the plaintiffs. Third, the clients would have paid for the plaintiffs' services.

That KPMG's Texas clients would have sought to replace KPMG requires speculation. The TPAA permits a firm whose registration has been revoked to apply for reinstatement. *See* TEX. OCC. CODE § 901.507 (1999) ("On receipt of a written application, and after notice and hearing, the board may . . . (2) reregister a person whose registration was revoked . . . ."). The competitors allege that the State Board would have revoked KPMG's license and registration because of a single partner's unlicensed practice (out of as many as seven hundred Texas partners). The competitors also allege that, from 1984 until 1999, KPMG garnered hundreds of millions of dollars in business from participating in Texas's public-accountancy market. KPMG's motivation to correct the cause of revocation and to seek reinstatement—quickly—would have been obvious. It is no less likely that KPMG's Texas clients would have waited for KPMG's reinstatement as that they would have sought to replace KPMG with another service provider.

That the clients would have replaced KPMG with one or more of the plaintiffs requires speculation. Had KPMG's Texas registration been revoked, as many as about seven hundred licensed and certified public accountants would

12

have found themselves at a firm with potentially diminished capacity to obtain business. Under such circumstances, some of the accountants may have chosen to leave KPMG. Clients of the departing accountants, deciding to replace KPMG, could have taken their business to KPMG's former partners instead of the plaintiffs.

That clients who chose to take their business to the plaintiffs ultimately would have paid the plaintiffs as they had KPMG also requires speculation, but we will not further belabor the point. The competitors' claim of injury depends on several layers of decisions by third parties—at minimum, KPMG's Texas clients—and is too speculative to confer Article III standing. We affirm the dismissal of the competitors' action under Federal Rule of Civil Procedure 12(b)(1).[3]

## B.

We affirm the dismissal of the clients' action, dismiss as moot the clients' appeal from the order striking the Lorenz and Warner exhibits, and do not reach the merits of KPMG's cross-appeal from the grant of NC Ventures's and St. James's motions to intervene.

## 1.

We review a dismissal under Federal Rule of Civil Procedure 12(b)(6) *de novo*. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

---

[3] Because the plaintiffs lack standing, we lack jurisdiction to determine whether: (A) the plaintiffs' claim of injury is too speculative to give rise to a claim for which relief can be granted; or (B) injury aside, the competitors otherwise fail to state a claim for which relief can be granted under the legal theories that they assert. Also, we do not reach the merits of KPMG's cross-appeal insofar as it requests an alternative holding that the State Board possesses exclusive jurisdiction over the competitors' action.

The clients allege that they bargained for, and paid for, the risk-free services of a properly-registered accounting firm but that they received the risk-bearing services of an improperly-registered accounting firm. As the clients allege, however, nobody outside of KPMG discovered Hudson's unlicensed public-accountancy practice until 2005. The clients do not contest that 2005 was too late for the State Board to revoke KPMG's 1984-1999 Texas registrations and licenses. Without the possibility that KPMG's registration and license might have been revoked, the clients' claim for relief collapses: the clients faced no prospect of needing to incur additional expenses to have KPMG's work checked by a licensed accountant or accountancy firm, and any representations that they made to third parties that KPMG's work was the work of a registered and licensed firm were true. Furthermore, because the potential basis for revoking KPMG's license and registration came to light too late for the State Board to do anything about it, any other claimed difference in market value between KPMG's "properly-licensed" and "improperly-licensed" services—even if theoretically conceivable—is simply implausible.

Whatever the status of KPMG's registrations and licenses from 1984 until 1999 may have been—"proper" or "improper"—is now only of academic interest and is immaterial as far as establishing any relief. We affirm the action's dismissal under Federal Rule of Civil Procedure 12(b)(6).

2.

The clients also appeal from the ruling to strike the Lorenz and Warner exhibits. We dismiss the appeal as moot. The clients represented to the district court that the Lorenz and Warner exhibits are not additive of the complaint's factual allegations but instead merely provide context to those allegations. For the reasons stated above, the complaint's allegations fail to state a claim for which relief can be granted. Exhibits that merely give context to those allegations cannot cure this deficiency.

3.

KPMG cross-appeals from the grant of NC Ventures's and St. James's motions to intervene as plaintiffs in the clients' action. We interpret KPMG's cross-appeal to be in the nature of an argument in the alternative, seeking to divide the plaintiffs if KPMG cannot achieve a blanket victory. Because KPMG prevails against all of the clients under Rule 12(b)(6), reaching this cross-appeal's merits is unnecessary.

IV.

For the foregoing reasons, the district court's judgments are

AFFIRMED.