# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 8, 2014                    Decided July 29, 2014

No. 13-5202

MATT SISSEL,
APPELLANT

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01263)

———

*Timothy M. Sandefur* argued the cause for appellant. With him on the briefs were *Paul J. Beard II* and *Daniel A. Himebaugh*. *Theodore Hadzi-Antich* entered an appearance.

*John C. Eastman* and *Anthony T. Caso* were on the brief for *amicus curiae* Center for Constitutional Jurisprudence in support of appellant.

*Lawrence J. Joseph* was on the brief for *amicus curiae* Association of American Physicians and Surgeons in support of appellant.

*Joseph E. Schmitz* and *Paul D. Kamenar* were on the brief

for *amici curiae* U.S. Representatives Trent Franks, et al. in support of appellant.

*Alisa B. Klein*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Stuart F. Delery*, Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, *Beth S. Brinkmann*, Deputy Assistant Attorney General, and *Mark B. Stern*, Attorney.

Before: ROGERS, PILLARD and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Section 5000A of the Patient Protection and Affordable Care Act, 26 U.S.C. § 5000A, mandates that as of January 2014, non-exempt individuals maintain minimum health care coverage or, with limited exceptions, pay a penalty. Matt Sissel, who is an artist and small-business owner who serves from time to time on active duty with the National Guard, appeals the dismissal of his complaint alleging that the mandate violates the Commerce Clause, U.S. CONST. art. I, § 8, cl. 3, and the Origination Clause, U.S. CONST. art. I, § 7, cl. 1. We affirm, because his contention that the mandate obligating him to buy government-approved health insurance violates the Commerce Clause fails under the Supreme Court's interpretation of the mandate in *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566, 2598 (2012) ("*NFIB*"), and his contention that the mandate's shared responsibility payment was enacted in violation of the Origination Clause fails under Supreme Court precedent interpreting that Clause.

**I.**

**A.**

Section 5000A of the Affordable Care Act imposes a "[r]equirement to maintain minimum essential [health insurance] coverage." 26 U.S.C. § 5000A. Subsection (a) provides that "[a]n applicable individual" — that is, an individual subject to the requirement — "shall for each month beginning after 2013 ensure that the individual, and any dependent of the individual who is an applicable individual, is covered under minimum essential coverage for such month." *Id.* § 5000A(a). Subsection (b) provides that if an applicable individual "fails to meet the requirement of subsection (a)," there shall be "imposed on the taxpayer a penalty," *id.* § 5000A(b)(1), denominated the "[s]hared responsibility payment," *id.*, which "shall be included with a taxpayer's [federal income tax] return," *id.* § 5000A(b)(2). These requirements are subject to several exceptions.

Subsection (d) limits who is an "applicable individual" subject to the coverage requirement. *See id.* § 5000A(d)(2)–(4). The "[r]eligious conscience exemption," *id.* § 5000A(d)(2)(A), exempts from the minimum coverage requirement a "member of a recognized religious sect" whose beliefs oppose the acceptance of insurance benefits and an "adherent of established tenets or teachings of such sect." *See also id.* § 1402(g)(1) (criteria for religious exemption). Also exempt is a "member of a [qualifying] health care sharing ministry" whose members "share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs." *Id.* § 5000A(d)(2)(B)(i) & (ii)(II). "Individuals not lawfully present" in the United States, *id.* § 5000A(d)(3), and "[i]ncarcerated individuals," *id.* § 5000A(d)(4), are likewise exempt from the insurance purchase requirement.

4

Subsection (e) enumerates when "[n]o penalty shall be imposed" for failure to obtain required health coverage. *Id.* § 5000A(e). Exempt are "[i]ndividuals who cannot afford coverage," that is, individuals whose "required contribution (determined on an *annual* basis) for coverage for the month exceeds 8 percent of such individual's household income for the taxable year." *Id.* § 5000A(e)(1) (emphasis added). The "required contribution" is the cost of obtaining minimum essential coverage, either through an employer-sponsored insurance plan or by purchasing in an insurance exchange "the lowest cost bronze plan available in the individual market . . . in which the individual resides." *Id.* § 5000A(e)(1)(B). Also exempt are "[t]axpayers with income below [the] filing threshold [for federal income taxes]," *id.* § 5000A(e)(2), "[m]embers of Indian tribes," *id.* § 5000A(e)(3), and individuals experiencing a "short . . . gap[]" in coverage of less than three months, *id.* § 5000A(e)(4). Individuals who "have suffered a hardship with respect to the capability to obtain coverage under a qualified health plan," as determined by the Secretary of Health and Human Services, are also exempt. *Id.* § 5000A(e)(5).

**B.**

According to the complaint filed October 11, 2012, Matt Sissel is an "artist who works out of his studio" in Iowa and "also works part-time . . . for the National Guard." First Am. Compl. ("Compl.") ¶ 5. "He is financially stable, has an annual income that requires him to file federal tax returns, and could afford health insurance if he wanted to obtain such coverage." *Id.* He "does not have, need, or want health insurance." *Id.* Further, "he is able to and does pay for any and all of his medical expenses out of pocket." *Id.* Because "he cannot claim any of the exemptions," *id.* ¶ 15, the Affordable Care "Act obligates [him] to purchase, at his own expense and against his will, federally approved health insurance, or pay the 'shared

responsibility payment,'" *id.* Sissel seeks declaratory and injunctive relief against the mandate and the Affordable Care Act *in toto*.

First, Sissel alleges that the Affordable Care Act's "purchase requirement," commonly known as the individual mandate, "is not a regulation of commerce, but purports to compel affected Americans, like [himself], to engage in commerce." *Id.* ¶ 34. Citing *NFIB*, 132 S. Ct. at 2600, where Chief Justice Roberts stated that "the Commerce Clause does not authorize such a command," he alleges that Section 5000A violates the Commerce Clause. *See id.* Second, he alleges that Section 5000A's "'shared responsibility payment' is a tax that raises revenue to support Government generally," *id.* ¶ 39, and violates the Origination Clause because it "originated in the Senate, not the House," *id.* ¶ 40.

The district court dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), ruling that Sissel's Commerce Clause claim was premised on a misreading of the *NFIB* decision, the Origination Clause did not apply because Section 5000A was not a bill for raising revenue, and, in any event, it satisfied the Origination Clause because there was a valid Senate amendment to a bill that originated in the House of Representatives. *See Sissel v. U.S. Dep't of Health & Human Servs.*, 951 F. Supp. 2d 159, 166–74 (D.D.C. 2013). Sissel appeals, and our review of the dismissal of the complaint is *de novo*. *See English v. Dist. of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's

favor, *see, e.g., Doe v. Rumsfeld*, 683 F.3d 390, 391 (D.C. Cir. 2012), but is not required to accept the plaintiff's legal conclusions as correct, *see id.*

**II.**

As a threshold matter, we must determine whether or not Sissel has standing under Article III of the Constitution in order to assure ourselves that this court has jurisdiction over his appeal. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992); *U.S. Telecom Ass'n v. FCC*, 295 F.3d 1326, 1330 (D.C. Cir. 2002). Standing must be shown at each stage of the judicial proceedings. *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013). The district court concluded Sissel had standing because he claimed to have had to sell property and curtail his professional activities in order to raise funds to pay for the required health insurance coverage. *See Sissel*, 951 F. Supp. 2d at 164 n.7. Sissel's complaint, however, does not demonstrate that as of the time of his appeal, he would be subject to the Affordable Care Act's individual mandate and shared responsibility payment. Although he alleged that in January 2008 he left the National Guard where he did have health insurance during his active service, *see* Compl. ¶ 24, his counsel advised during oral argument before this court that Sissel was currently on active duty with the National Guard. *See* Oral Arg. Tr. 5:14–17 (May 8, 2014). It also was unclear from the complaint whether the circumstances relating to Sissel's annual income and relied on by the district court had changed. *See id.* at 7:8–20.

Upon review of the requested supplementation, *see* Order (May 22, 2014), we hold that Sissel has Article III standing. By signed affidavit, Sissel attests that he does not fall within any of the exemptions under the Affordable Care Act, 26 U.S.C. § 5000A(d)(2)–(4), (e)(3). For example, he avers that he has no

religious objection to purchasing health insurance, he is not a member of an Indian tribe, he is not incarcerated, and he has not been determined ineligible for Medicaid or had an individual insurance plan cancelled. *See* Sissel Aff. ¶¶ 3–13 (June 2, 2014); 26 U.S.C. § 5000A(d)(2) & (4), (e)(3) & (5). Additionally, he avers that as of June 2, 2014, he was no longer on active duty with the National Guard, and that he has not purchased health insurance through the National Guard, and is not eligible for any kind of insurance coverage or continuing care through the National Guard. *See* Sissel Aff. ¶¶ 14–15. According to Sissel, the National Guard would provide emergency care for any injuries or illnesses he might suffer while on active duty, but the Guard has no such "limited medical-emergency" obligation when he is not on active duty. *Id.* ¶ 15.

Sissel's counsel has further attested that based on available information from the "Washington Healthplanfinder" website, the cost of the least expensive qualifying health plan in the region of the country where Sissel now lives is less than 8 percent of Sissel's projected 2014 income. *See* Sandefur Aff. ¶ 2 (June 2, 2014), Ex. A; Sissel Aff. ¶ 10. In his complaint and affidavit, Sissel states that the two sources of his annual income are his work as an artist and his part-time service as a Public Affairs Specialist for the National Guard. *See* Compl. ¶ 5; Sissel Aff. ¶ 10. Consequently, Sissel maintains he does not qualify for a low-income exemption under the Affordable Care Act, 26 U.S.C. § 5000A(e)(1)(a). *See* Appellant's Supp. Br. 3–4.

Taking these factual representations as true, as we must for purposes of Article III standing, *see Defenders of Wildlife*, 504 U.S. at 561, and absent any basis to question Sissel's view of the legal obligation of the National Guard with respect to health care coverage, it appears certain that Sissel is subject to the Section 5000A mandate requiring him to purchase minimum essential

health insurance coverage or else to pay the shared responsibility payment. The government does not challenge the affiants' representations or otherwise claim that Sissel lacks Article III standing. *See* Appellees' Supp. Br. 1. Even though Sissel is still a member of the National Guard and from time to time may be called to active duty, providing him temporary health insurance coverage by the Guard, the government has not suggested this circumstance would render exempt an individual otherwise subject to the requirements of Section 5000A, and we agree. Congress has included limited, specific exemptions from Section 5000A, and, absent reason to conclude otherwise, exemptions are to be construed narrowly. *See, e.g., A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). This court is aware of no countervailing considerations inasmuch as the Affordable Care Act seeks "to increase the number of Americans covered by health insurance and decrease the cost of health care." *NFIB*, 132 S. Ct. at 2580. We therefore turn to the merits of Sissel's complaint.

## III.

The Constitution authorizes the Congress to "regulate Commerce . . . among the several States," U.S. CONST. art. I, § 8, cl. 3, and to "make all Laws which shall be necessary and proper for carrying into Execution" that authority, *id.* art. I, § 8, cl. 18. In *NFIB*, several States and private parties challenged the Section 5000A individual mandate on the ground, among others, that the Commerce Clause did not empower Congress to require individuals to purchase health insurance. *See* State Resp'ts Br. on Minimum Coverage Provision 15–51; Private Resp'ts Br. on Individual Mandate 15–62, in *U.S. Dep't of Health & Human Servs. v. Florida*, No. 11-398, *decided sub. nom. NFIB*, 132 S. Ct. 2566. Five Justices would have held that if the individual mandate commanded individuals to purchase insurance, then its enactment would have exceeded Congress's authority under the

Commerce Clause, U.S. CONST. art. I, § 8, cl. 3; *see NFIB*, 132 S. Ct. at 2593 (separate opinion of Roberts, C.J.), 2650 (Scalia, Kennedy, Thomas, and Alito, JJ., dissenting), but the Court understood that Section 5000A gives individuals the choice of purchasing insurance or paying a tax, and sustained it as a valid exercise of Congress's taxing power, U.S. CONST. art. I, § 8, cl.1; *see NFIB*, 132 S. Ct. at 2598.

Sissel seeks to "enjoin[] the government from enforcing the individual mandate against him," Reply Br. 3, because "the Commerce Clause does not authorize Congress to impose" the mandate, Appellant's Br. 6. He maintains that in *NFIB* the Supreme Court "did not sustain the individual mandate under the taxing power." *Id.* at 7. "[I]ndeed," he suggests, "the Supreme Court did not sustain the individual mandate at all." *Id.* In Sissel's view, "[t]he *NFIB* opinion makes an essential constitutional distinction between the individual mandate — which compels people to buy health insurance — and the shared responsibility payment — which imposes a tax on people who choose not to purchase health insurance," and he maintains that only the *latter* was upheld by the Court. *Id.* at 7, 10. Unless this court declares the individual mandate invalid, he contends the mandate will "render[] [him] a violator of federal law if he fails to buy the prescribed insurance." *Id.* at 12.

Sissel's Commerce Clause claim rests on a flawed understanding of the Supreme Court's decision in *NFIB*. *See* Appellees' Br. 7–8. In *NFIB*, the government "ask[ed] [the Court] to read the mandate *not* as ordering individuals to buy insurance, but rather as imposing a tax on those who do not buy that product." *NFIB*, 132 S. Ct. at 2593 (emphasis added); *see also id.* at 2584 (separate opinion of Roberts, C.J.). Although Chief Justice Roberts stated that "[t]he most straightforward reading of the mandate is that it commands individuals to purchase insurance," *id.*, he concluded, in an opinion joined by

four other Justices, that "it *need not* be read to declare that failing to [purchase insurance] is unlawful," *id.* at 2597 (opinion of Roberts, C.J., joined by Ginsburg, Breyer, Sotomayor, and Kagan, JJ.) (emphasis added). Rather, the Court held that Section 5000A can be read to do nothing "more than impose a tax," and "[t]hat is sufficient to sustain it" under the Constitution. *Id.* at 2598.

Sissel's contention that the individual mandate "compels [him] to buy health insurance," Appellant's Br. 7, is thus foreclosed under the Supreme Court's interpretation of the mandate; in the Court's opinion, the mandate provision "leaves [Sissel] with a lawful choice" to purchase health insurance or not, "so long as he is willing to pay a tax levied on that choice," *NFIB*, 132 S. Ct. at 2600. Although the Chief Justice stated that the individual mandate "*would* . . . be unconstitutional *if* read as a command," he concluded that it is *not* unconstitutional as beyond the scope of Congressional authority because it "can reasonably be read" as *not* imposing a command. *Id.* at 2601 (separate opinion of Roberts, C.J.) (emphasis added). The Court's decision to sustain the constitutionality of the whole of Section 5000A under the taxing power necessarily disposes of Sissel's Commerce Clause claim. His reliance on later opinions in the circuits is misplaced as none denies that the Supreme Court upheld the individual mandate as a valid exercise of the taxing power. *See Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 97 (4th Cir. 2013); *United States v. Rose*, 714 F.3d 362, 371 (6th Cir. 2013); *United States v. Roszkowski*, 700 F.3d 50, 58 (1st Cir. 2012).

**IV.**

The Origination Clause, U.S. CONST. art. I, § 7, cl. 1, states that "[a]ll Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with

Amendments as on other Bills." Sissel contends that "the shared responsibility payment is a bill for raising revenue" and that it "originated in the Senate, not the House" in violation of the Origination Clause. Appellant's Br. 20. He states in his complaint that "[i]n September, 2009, the House [of Representatives] passed H.R. 3590, entitled the 'Service Members Home Ownership Tax Act of 2009,'" to "'amend[] the Internal Revenue Code of 1986 to modify [the] first-time homebuyers credit in the case of members of the Armed Forces and certain other Federal employees.'" Compl. ¶ 40. He alleges this bill "had nothing to do with health insurance reform," and yet "[i]n November of [2009], the Senate purported to 'amend' the House bill by gutting its contents, replacing them with health-insurance reforms (including the purchase requirement and associated payment), and renaming the bill the 'Patient Protection and Affordable Care Act.'" *Id.* The "substitute legislation," he alleges, was "a revenue-raising tax bill," *id.*, and the enactment of the Act violated the Origination Clause "[b]ecause the tax originated in the Senate, and not in the House," *id.* ¶ 41. Because we conclude that the shared responsibility payment in Section 5000A is not a "Bill[] for raising Revenue" within the Supreme Court's accepted meaning of that phrase, and thus was not subject to the Origination Clause, this court has no occasion to determine whether it originated in the House or the Senate.

In interpreting the Origination Clause, the Supreme Court has held from the early days of this Nation that "revenue bills are those that levy taxes in the strict sense of the word, and are not bills for other purposes which may incidentally create revenue." *Twin City Bank v. Nebeker*, 167 U.S. 196, 202 (1897) (citing 1 J. STORY, COMMENTARIES ON THE CONSTITUTION § 880). The Court has adhered to this "strict" interpretation. *See United States v. Munoz-Flores*, 495 U.S. 385, 397 (1990); *Millard v. Roberts*, 202 U.S. 429, 436 (1906); *United States v.*

*Norton*, 91 U.S. 566, 569 (1875). Necessarily, this court has followed suit. *See Rural Cellular Ass'n v. FCC*, 685 F.3d 1083, 1090 (D.C. Cir. 2012). Under this "strict" interpretation, the Supreme Court has upheld as not subject to the Origination Clause a tax on circulating bank notes, *see Nebeker*, 167 U.S. at 202, a tax to fund railway construction in the District of Columbia, *see Millard*, 202 U.S. at 436–37, and a "special assessment" levied on federal criminal offenders for a victims' fund, *see Munoz-Flores*, 495 U.S. at 401. In each case, consistent with its "strict" interpretation of the phrase "Bills for raising Revenue," the Court's analysis focused on the *purpose* of the challenged measure: Because the revenue raised was merely incidental to the main object or aim of the challenged measure, the requirements of the Origination Clause were held not to apply. In *Nebeker*, for example, the issue was whether "a tax upon the average amount of the notes of a national banking association in circulation[] was a revenue bill within the [Origination] [C]lause." 167 U.S. at 202. The Court observed that "[t]he *main purpose* that Congress had in view was to provide a national currency based upon United States bonds, and to that end it was deemed wise to impose the tax in question." *Id.* at 203 (emphasis added). Similarly, in *Millard*, involving the use of property taxes to fund railway construction in the District of Columbia, the Court reasoned that "[w]hatever taxes are imposed are but *means to the purposes* provided by the act." 202 U.S. at 437 (emphasis added). And in *Munoz-Flores*, the Court noted that "[a]ny revenue for the general Treasury that [the provision imposing a special assessment on defendants] creates is . . . 'incidental' to that provision's *primary purpose*," which was to provide money for a crime victims' fund. 495 U.S. at 399 (emphasis added; alterations omitted). In each instance, the Court underscored that unless a bill is aimed at "levy[ing] taxes in the strict sense," it does not fall within the limited scope of the Origination Clause. *Munoz-Flores*, 495 U.S. at 397; *Millard*, 202 U.S. at 436; *Nebeker*, 167 U.S. at 202.

The purposive approach embodied in Supreme Court precedent necessarily leads to the conclusion that Section 5000A of the Affordable Care Act is not a "Bill[] for raising Revenue" under the Origination Clause. The Supreme Court's repeated focus on the statutory provision's "object," *Nebeker*, 167 U.S. at 203, and "primary purpose," *Munoz-Flores*, 495 U.S. at 399, makes clear, contrary to Sissel's position, that the *purpose* of a bill is critical to the Origination Clause inquiry. And after the Supreme Court's decision in *NFIB*, it is beyond dispute that the paramount aim of the Affordable Care Act is "to increase the number of Americans covered by health insurance and decrease the cost of health care," *NFIB*, 132 S. Ct. at 2580, not to raise revenue by means of the shared responsibility payment. The Supreme Court explained: "Although the [Section 5000A] payment will raise considerable revenue, it is *plainly designed* to expand health insurance coverage." *Id.* at 2596 (emphasis added); *see id.* at 2596–97. This court noted in *Seven-Sky v. Holder*, 661 F.3d 1, 6 (D.C. Cir. 2012), *abrogated by NFIB*, 132 S. Ct. 2566 (2012), that the "congressional findings never suggested that Congress's purpose was to raise revenue." *See* 42 U.S.C. § 18091(2) (congressional findings). To the contrary, "the aim of the shared responsibility payment is to encourage everyone to purchase insurance; the goal is universal coverage, not revenues from penalties." *Seven-Sky*, 661 F.3d at 6. The Supreme Court acknowledged that the Section 5000A shared responsibility payment may ultimately generate substantial revenues — potentially $4 billion in annual income for the government by 2017, *see NFIB*, 132 S. Ct. at 2594 — if people do not "sign up" for coverage, but those revenues are a by-product of the Affordable Care Act's primary aim to induce participation in health insurance plans. Successful operation of the Act would mean *less* revenue from Section 5000A payments, not more.

Sissel contends, however, that the Supreme Court cases rejecting Origination Clause challenges merely embody "two exceptions" to the general "presumpt[ion]" that "[a]ll taxes" are subject to the Clause. Appellant's Br. 14; Reply Br. 6–7. He maintains that the Affordable Care Act does not fall within either exception because the Section 5000A payment neither funds a *particular* governmental program, as was true in *Munoz-Flores*, 495 U.S. at 397–98, nor enforces compliance with a statute passed under some *other* (non-taxing) constitutional power, as in *Millard*, 202 U.S. at 433. Yet even assuming Sissel is correct that the precedent can be classified in one or both of his categories, neither the Supreme Court nor this court has held that a statute *must* be so classifiable to avoid the requirements of the Origination Clause. All Sissel has demonstrated is that the Affordable Care Act's mandate does not fall squarely within the fact patterns of prior unsuccessful Origination Clause challenges, not that his challenge should succeed.

Sissel's interpretation of the taxing power also fails to adhere to Supreme Court precedent. In emphasizing that in *NFIB* the Court upheld Section 5000A *solely* as an exercise of Congress's taxing power, *see NFIB*, 132 S. Ct. at 2600, Sissel contends that the Section 5000A tax is presumptively subject to the Origination Clause because it "serves no *constitutional* purpose other than to raise revenue pursuant to Congress's taxing power." Reply Br. 7. This implicitly assumes that all exercises of the taxing power are necessarily aimed at raising revenue. In fact, "the taxing power is often, very often, applied for other purposes[] than revenue." 2 JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 962, p. 434 (1833), *cited in NFIB*, 132 S. Ct. at 2596. In *United States v. Sanchez*, 340 U.S. 42 (1950), the Supreme Court stated:

It is beyond serious question that a tax does not cease

> to be valid [under the taxing power] merely because it regulates, discourages, or even definitely deters the activities taxed.  The principle applies even though the revenue obtained is obviously negligible, or the *revenue purpose of the tax may be secondary*.  Nor does a tax statute necessarily fall because it touches on activities which Congress might not otherwise regulate.

*Id.* at 44 (emphasis added; citations omitted).  That view was reiterated in *United States v. Kahriger*, 345 U.S. 22 (1953), where the Court upheld "a tax on persons engaged in the business of accepting wagers," *id.* at 23, notwithstanding the argument that "the sole purpose of the statute is to penalize . . . illegal gambling in the states through the guise of a tax measure," *id.* at 28, *abrogated on other grounds by Marchetti v. United States*, 390 U.S. 39 (1968).  Because not all of Congress's exercises of the taxing power are primarily aimed at raising revenue, and a measure is a "Bill[] for raising Revenue" only if its *primary purpose* is to raise general revenues, some exercises of the taxing power are not subject to the Origination Clause.  The Supreme Court's decisions in *Nebeker* and *Millard* confirm this point:  Not all "taxes" are "Bills for raising Revenue."  *See Nebeker*, 167 U.S. at 202; *Millard*, 202 U.S. at 436–37.

Sissel's attempts to distinguish the Supreme Court's "tax" cases confirm that the Origination Clause inquiry does not hinge on the existence (or absence) of another source of constitutional authority.  For instance, Sissel contends that the tax on circulating notes in *Nebeker* was not a "Bill[] for raising Revenue" because, among other things, it was enacted "in furtherance of Congress's Article I power to coin money." Reply Br. 6; *see* U.S. CONST. art I, § 8, cl. 5.  But *many* taxes are imposed to raise revenue in furtherance of the federal government's enumerated powers, and some of those taxes may

well be "Bills for raising Revenue." The mere existence of another source of Congressional power, then, cannot be what insulates a measure from the Origination Clause. Conversely, a measure that would *not* be a "Bill[] for raising Revenue" does not become one simply because Congress lacks an independent basis (apart from the taxing power) to enact it. For example, Sissel contends that the tax to finance railroad projects in *Millard* was not a "Bill[] for raising Revenue" because, among other things, Congress possessed exclusive constitutional jurisdiction over the District of Columbia. Reply Br. 7; *see* U.S. CONST. art. I, § 8, cl. 17. Yet nothing in *Millard* hints that Congress's authority over the District of Columbia affected the Origination Clause inquiry in that case. *See Millard*, 202 U.S. at 436–37.

In sum, under Supreme Court precedent, the presence of another constitutional power does not suggest that a provision is *not* a "Bill[] for raising Revenue," and the absence of another constitutional power does not, in itself, suggest that it *is*. Because the existence of another power is not necessary (or sufficient) to exempt a bill from the Origination Clause, the mere fact that Section 5000A may have been enacted *solely* pursuant to Congress's taxing power does not compel the conclusion that the entire Affordable Care Act is a "Bill[] for raising Revenue" subject to the Origination Clause. Where, as here, the Supreme Court has concluded that a provision's revenue-raising function is incidental to its primary purpose, *see NFIB*, 132 S. Ct. at 2596, the Origination Clause does not apply. The analysis is not altered by the fact that the shared responsibility payment may in fact generate substantial revenues. In light of the Supreme Court's historical commitment to a narrow construction of the Origination Clause, this court can only hold that the challenged measure — whose primary purpose "plainly" was *not* to raise revenue, *id.* at 2596 — falls outside the scope of the Clause.

Accordingly, we affirm the dismissal of the complaint for failure to state a cause of action.