# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 8, 2022        Decided March 14, 2023

No. 22-7014

METROPOLITAN WASHINGTON CHAPTER, ASSOCIATED
BUILDERS AND CONTRACTORS, INC.,
APPELLANT

v.

DISTRICT OF COLUMBIA, A MUNICIPAL CORPORATION AND
MURIEL E. BOWSER, IN HER OFFICIAL CAPACITY AS MAYOR OF
THE DISTRICT OF COLUMBIA,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00853)

———

*Paul J. Kiernan* argued the cause and filed the briefs for appellant.

*Graham E. Phillips*, Deputy Solicitor General, Office of the Attorney General for the District of Columbia, argued the cause for appellees. With him on the brief were *Karl A. Racine*, Attorney General at the time the brief was filed, *Caroline S. Van Zile*, Solicitor General, and *Ashwin P. Phatak*, Principal

Deputy Solicitor General. *Carl J. Schifferle*, Assistant Attorney General, entered an appearance.

Before: MILLETT and CHILDS, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* ROGERS.

ROGERS, *Senior Circuit Judge*: Metropolitan Washington Chapter, Associated Builders and Contractors, Inc. ("Metro Washington"), a corporate trade organization representing construction companies, brought this pre-enforcement challenge to the constitutionality of the District of Columbia First Source Employment Agreement Act of 1984, D.C. Code § 2-219.01 *et seq.* (as amended). The statute requires contractors on D.C. government-assisted projects to grant hiring preferences to D.C. residents. Metro Washington appeals the district court's Rule 12 dismissals of the claims under the dormant Commerce Clause, U.S. Const. Art. I, § 8, cl. 3, and the Privileges and Immunities Clause, *id*. Art. IV, § 2, cl. 1, and the grant of summary judgment to the District of Columbia on the substantive due process claim, *id*. Amend. V. For the following reasons, we affirm in part and we dismiss in part.

## I.

As amended in 2011, the statute requires the contractor on "every . . . project or contract" that receives D.C. government assistance "valued at $300,000 or more" to grant hiring preferences to residents of the District and periodically submit a compliance report to the D.C. Department of Employment Services. The Workforce Intermediary Establishment and Reform of First Source Amendment Act of 2011, D.C. Law 19-84, 58 D.C. Reg. 11,170 (2011) (codified at D.C. Code § 2-

219.01 *et seq.*). The hiring and reporting obligations vary depending on the value of government assistance and on whether a "construction project or contract" is involved. *See* D.C. Code § 2-219.03(e). For example, if the government assistance is valued between $300,000 and $5,000,000, then the contractor must agree "that at least 51% of the new employees hired to work on the project or contract shall be District residents." *Id*. § 2-219.03(e)(1)(A). The District may grant a waiver upon the contractor's demonstrating a "good-faith effort to comply." *Id*. § 2-219.03(e)(2)(B)(i). When the District determines that a good-faith waiver is not justified, it may impose monetary penalties calibrated to the value of the total labor costs of the project. *Id*. §§ 2-219.03(e)(4)(A), (B). Repeated violations within a ten-year period can trigger debarment from consideration for the award of government projects for up to five years. *Id*. §§ 2-219.03(e)(4)(C), (D).

In 2012, Metro Washington, along with two construction companies and four construction workers who were residents of Maryland or Virginia, sued pursuant to 42 U.S.C. § 1983, seeking "declaratory and injunctive relief against the Mayor and the District of Columbia . . . to strike down as unconstitutional the District's First Source Employment Act and to block its enforcement." Compl. 2. They challenged the Act's constitutionality on various grounds, including that it violated the dormant Commerce Clause, the Fifth Amendment, and the Privileges and Immunities Clause. *Id*. ¶¶ 95–101, 102–07, 116–20, 88–94. The District moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion with respect to all but one of the claims. *Metro. Washington Chapter v. District of Columbia*, 57 F. Supp. 3d 1, 32 (D.D.C. 2014). The court ruled that the complaint failed to state a viable claim under the dormant Commerce Clause and the Fifth

Amendment, *id*. at 26–28, 29, 31, while denying the motion as to the Privileges and Immunities Clause claim, *id*. at 26.

After the District moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the district court *sua sponte* appointed amicus curiae to address the applicability of the Privileges and Immunities Clause to the District of Columbia. At a hearing on the District's Rule 12(c) motion, the district court ruled that "the Privileges and Immunities Clause, *per se*, doe[s not] apply" to the District of Columbia. But the court allowed the case to proceed in view of amicus's argument that the Due Process Clause of the Fifth Amendment incorporates against the District of Columbia the individual rights conferred by the Privileges and Immunities Clause. Upon the filing of an amended complaint reflecting this "reverse incorporation" theory, Am. Compl. ¶¶ 89–96, and the voluntary dismissal of one of the two construction companies, Stipulation of Dismissal of Pl., ECF No. 53**,** the parties filed cross motions for summary judgment. The district court granted summary judgment to the District. *Metro. Washington Chapter v. District of Columbia*, 578 F. Supp. 3d 7, 10 (D.D.C. 2021). The court found that the construction workers lacked Article III standing because they failed to show injury in fact from operation of the statute, *id*. at 14–15 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)), but that Metro Washington had associational standing, *id*. at 15–16 (citing *Chamber of Com. v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011)). On the merits, the court ruled that the Privileges and Immunities Clause is inapplicable to the District of Columbia under *Duehay v. Acacia Mutual Life Insurance Co*., 105 F.2d 768 (D.C. Cir. 1939), and that "there is no basis upon which to incorporate the Privileges and Immunities Clause into the Fifth Amendment." *Metro. Washington Chapter*, 578 F. Supp. 3d at 18. Metro Washington appeals.

5

**II.**

Metro Washington contends that the statute imposes residence-based hiring requirements on contractors in violation of the dormant Commerce Clause, the Privileges and Immunities Clause, and the due process component of the Fifth Amendment. In view of the parties' contentions, we ask whether Metro Washington has shown both constitutional and prudential standing with respect to each of its claims. *See Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996).

Organized as a nonstock corporation under Maryland law, Metro Washington is the "leading commercial[] construction association" in the Washington, D.C., metropolitan area with 529 member organizations. Am. Compl. ¶ 4. Its membership comprises "general contractors, specialty contractors, construction industry . . . associates, and suppliers." *Id*. Metro Washington seeks judicial relief from injury not to itself but to its members. It may do so in accordance with the constitutional requirement of a case or controversy when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

To meet the requirement that it "identify at least one member with independent standing to sue," *Flyers Rts. Educ. Fund, Inc. v. U.S. Dep't of Transp.*, 957 F.3d 1359, 1362 (D.C. Cir. 2020), Metro Washington relies *inter alia* on the alleged injury suffered by its member Miller & Long, Inc., a corporate construction company that "regularly bids on work projects" covered by the statute. Am. Compl. ¶ 5. Miller & Long can

bring this action in its own right based on its allegations that it incurs increased administrative costs to comply with the statute's hiring and reporting requirements, which constitutes injury in fact that would be redressed by a favorable decision. *See Ass'n of Am. R.R.s. v. Dep't of Transp.*, 38 F.3d 582, 585–86 (D.C. Cir. 1994); *Lutheran Church-Mo. Synod v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998). *See generally Lujan*, 504 U.S. at 560–61. The litigation is germane to Metro Washington's purpose of promoting hiring "based on individual merit and performance" irrespective of a construction worker's state of residence, Am. Compl. ¶ 4, and the relief requested by Metro Washington does not require participation by individual construction companies, satisfying the requirements for Article III standing under *Hunt*, 432 U.S. 333.

To the extent that Metro Washington rests its claim to relief on the Privileges and Immunities Clause and the Fifth Amendment, the District of Columbia disputes Metro Washington's prudential standing on the ground that the proper parties to assert those rights are individual nonresident workers. "[T]he source of the plaintiff's claim to relief assumes critical importance with respect to the prudential rules of standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *see also Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 400 n.16 (1987). "Ordinarily, a party 'must assert [its] own legal rights' and 'cannot rest [its] claim to relief on the legal rights . . . of third parties.'" *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017) (quoting *Warth*, 422 U.S. at 499). "Th[is] limitation," the Supreme Court explained, "frees the [c]ourt . . . from unnecessary pronouncement on constitutional issues" and "assures the court that the issues before it will be concrete and sharply presented." *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984) (quoting *United States v. Raines*, 362 U.S. 17, 22 (1960)). It "assumes that the party with the right has the appropriate incentive to challenge (or not

challenge) governmental action and to do so with the necessary zeal and appropriate presentation." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). Although the precedents are less than pellucid about the scope of the "exception" to this rule, the Court has sometimes allowed a litigant to assert the rights of a third party when (1) "the party asserting the right has a 'close' relationship with the person who possesses the right" and (2) "there is a 'hindrance' to the possessor's ability to protect [its] own interests." *Id.* at 130 (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).

Neither Metro Washington nor any of its identified members possesses a right protected by the Privileges and Immunities Clause. First, Metro Washington acknowledges that both the association and its identified members (on whose alleged injuries it relies) are corporations. Appellant's Br. 7 n.21, 12. The Supreme Court has interpreted the Privileges and Immunities Clause "not to protect corporations," *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2460–61 (2019) (citing *W. & S. Life Ins. Co. v. State Bd. of Equalization of Cal.*, 451 U.S. 648, 656 (1981)), inasmuch as "[a] corporation is not a mere collection of individuals capable of claiming all benefits assured them by Section 2, Article IV, of the Constitution," *Hemphill v. Orloff*, 277 U.S. 537, 548 (1928). Second, the statute's requirements apply equally to contractors based in the District of Columbia and outside. *See* D.C. Code § 2-219.01 *et seq*. Neither Metro Washington nor its identified members can therefore claim the protections of the Privileges and Immunities Clause based on their state of residency. Because the Privileges and Immunities Clause confers neither Metro Washington nor its identified members with a right to challenge the statute, Metro Washington asserts the rights of individual nonresident workers, who are third parties not before the court. The nonresident workers who initially filed the case were dismissed for a lack of injury in

fact, *Metro. Washington Chapter*, 578 F. Supp. 3d at 14–15, and they have not appealed.

Yet Metro Washington does not attempt to show the requisite "'close' relationship" or "hindrance" to surmount the general bar on vicariously asserting the rights of third parties. *Kowalski*, 543 U.S. at 130 (quoting *Powers*, 499 U.S. at 411). In its opening brief, Metro Washington appears to disclaim any argument that this case qualifies under an "exception" to the rule against third-party standing. Appellant's Br. 13. In its reply brief, Metro Washington purports to speak in part "for the rights of . . . the employees who comprise [its] members," Appellant's Reply Br. 3, but it is construction companies, not workers, who are Metro Washington's members, Am. Compl. ¶ 4. Metro Washington does not identify any obstacle that would hamper a nonresident worker's "ability to protect his own interests." *Kowalski*, 543 U.S. at 130. Indeed, several nonresident workers *did* participate in the district court proceedings, although they did not appeal. Nor is this an instance in which "enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights," where the Court has "been quite forgiving with the[] criteria" for asserting third-party standing. *Id.* (internal quotation marks omitted); *see June Med. Servs. LLC v. Russo*, 140 S. Ct. 2103, 2118–19 (2020) (plurality opinion) (collecting such cases). *See generally* Curtis A. Bradley & Ernest A. Young, *Unpacking Third-Party Standing*, 131 YALE L.J. 1, 56–57 (2021). There is no suggestion that the statute would be enforced against Metro Washington.

It is telling that the challengers in all the Privileges and Immunities Clause cases invalidating "residence-preference" laws that Metro Washington invokes were individual out-of-state workers. In *New Hampshire v. Piper*, 470 U.S. 274 (1985), a Vermont resident who wished to practice law in

neighboring New Hampshire challenged a New Hampshire law limiting bar admission to state residents. Likewise, the plaintiffs in *Hicklin v. Orbeck*, 437 U.S. 518 (1978), were individual workers considered non-Alaskan residents for the purposes of the "Alaska Hire" law at issue. Indeed, in *Toomer v. Witsell*, 334 U.S. 385 (1948), it was decisive that individual shrimp fishermen residing in Georgia were among the challengers to the discriminatory South Carolina law because their co-plaintiff, a corporate association of fish dealers, was found to be without standing, *id*. at 391. In each of those cases, the challengers' standing rested on the privileges-and-immunities rights of nonresident workers. *Accord*. *Lunding v. N.Y. Tax Appeals Tribunal*, 522 U.S. 287, 293 (1998); *Austin v. New Hampshire*, 420 U.S. 656, 657 (1975); *Doe v. Bolton*, 410 U.S. 179, 184-85, 200 (1973); *Blake v. McClung*, 172 U.S. 239, 243 (1898).

This is also true of the only case identified by Metro Washington that involved associational standing. In *United Building & Construction Trades Council v. Mayor & Council of Camden*, 465 U.S. 208 (1984), the Supreme Court clarified that the Privileges and Immunities Clause binds municipalities and remanded the case to the New Jersey Supreme Court to determine whether the challenged city ordinance was constitutional. *Id*. at 221. The challenger was an unincorporated association of labor unions that sought to invoke the privileges-and-immunities rights of out-of-state workers who were members of the unions. Br. of Appellant at *4–5, *5 n.10, *Camden*, 465 U.S. 208 (1983) (No. 81-2110). Metro Washington's membership, by contrast, is limited to contractors, and it cites no authority exempting from the third-party standing rule a corporate association that seeks to assert the privileges-and-immunities "rights of its *members' employees*." Appellant's Reply Br. 3 (emphasis added). Anyway, *Camden* arose from state court, a context in which the

Court has relaxed its prudential standing limitations. *See City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999) (plurality opinion). Unlike here, "[w]hen a state court has reached the merits of a constitutional claim, 'invoking prudential limitations on the respondent's assertion of *jus tertii* would serve no functional purpose.'" *Id*. (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243 (1983) (alteration omitted)).

Whether the third-party standing rule is best viewed as constitutional or prudential (and thereby waivable) is immaterial here because the District has not waived its challenge to Metro Washington's standing to assert the privileges-and-immunities rights of nonresident workers. *See Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 179 (D.C. Cir. 2012); *id*. at 180 (Tatel, J., concurring); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014). Contrary to Metro Washington's suggestion, the District raised the third-party standing objection in its motion to dismiss, Def.'s Mot. to Dismiss 16–17, ECF No. 6, thereby preserving its argument in view of the possibility that the individual workers would be dismissed from the action, *see id*., and the district court noted the preservation of this issue, *Metro. Washington Chapter*, 57 F. Supp. 3d at 20 n.9.

Metro Washington's substantive due process claim invokes "the same" privileges-and-immunities right held by nonresident workers. Appellant's Br. 28. In support of its "reverse-incorporation" theory, Metro Washington maintains it is a "necessity" that the Privileges and Immunities Clause and the Due Process Clause of the Fifth Amendment provide "a uniformity of protection." *Id*. Indeed, Metro Washington begins its substantive due process argument by urging this court to recognize that "the rights protected by the [Privileges and Immunities] Clause should be protected in the District for

nonresidents and residents alike," *id*. at 26, and to adopt a uniform standard such that the "same rights are protected . . . under one standard," *id*. at 28. Metro Washington did not allege in its amended complaint, nor argue in this court, that corporations may have direct rights under its theory of reverse incorporation. Consequently, Metro Washington's prudential standing theories to bring the Privileges and Immunities Clause claim and the Due Process Clause claim must stand and fall together. For the reasons discussed, the Privileges and Immunities Clause confers neither Metro Washington nor its identified members with a right to challenge the statute. Because the protections of the Privileges and Immunities Clause and the putative Fifth Amendment privileges-and-immunities right must be coextensive on Metro Washington's theory, its members likewise possess no substantive due process right that is infringed by the statute.

Given that Metro Washington's Privileges and Immunities Clause and substantive due process claims run afoul of the general rule against third-party standing, this court need only address the merits of its dormant Commerce Clause challenge. "[T]he cardinal principle of judicial restraint — if it is not necessary to decide more, it is necessary not to decide more — counsels us to go no further." *PDK Labs., Inc. v. U.S. Drug Enf't Agency*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment).

## III.

Turning to the merits, this court reviews *de novo* the district court's dismissal of Metro Washington's dormant Commerce Clause claim, *see Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014), "apply[ing] to local legislation of the District [of Columbia] the same interstate commerce analysis as [it] would to state laws," *Milton S. Kronheim & Co. v. District of*

*Columbia*, 91 F.3d 193, 198 (D.C. Cir. 1996) (citing *Electrolert Corp. v. Barry*, 737 F.2d 110 (D.C. Cir. 1984)). The Commerce Clause operates as "an implicit restraint on state authority, even in the absence of a conflicting federal statute." *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007). In this "negative aspect," the Commerce Clause "prohibits economic protectionism — that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Fulton Corp. v. Faulkner*, 516 U.S. 325, 330 (1996) (internal quotation marks omitted). But "when a state or local government enters the market as a participant it is not subject to the restraints of the Commerce Clause." *White v. Mass. Council of Constr. Emps., Inc.*, 460 U.S. 204, 208 (1983). In upholding an executive order of the Boston mayor that required at least half the workers to be Boston residents on all construction projects funded in whole or in part by city funds, the Court concluded that Boston was acting as a market participant and was therefore unconstrained by the dormant Commerce Clause. *Id*. at 214–15. This "market-participant exception reflects a basic distinction . . . between States as market participants and States as market regulators," grounded in the recognition that "the Framers' distrust of economic Balkanization was limited by their federalism favoring a degree of local autonomy." *Kentucky v. Davis*, 553 U.S. 328, 338–39 (2008) (internal quotation marks omitted) (citing THE FEDERALIST NOS. 7, 11 (Alexander Hamilton), NOS. 42, 51 (James Madison)).

Metro Washington maintains that the statute violates the dormant Commerce Clause because its employment requirements discriminate against non-D.C. residents and impermissibly burden interstate commerce. Metro Washington does not challenge the statute as applied to any particular project on which one of its members is the contractor; nor does it identify any individualized characteristics of its members that

would render unconstitutional the statute's application to them in particular. *See, e.g.*, *Sabri v. United States*, 541 U.S. 600, 609 (2004). Rather, Metro Washington attacks the statute as facially invalid under the dormant Commerce Clause and seeks to have the statute declared unconstitutional in all possible applications and its enforcement enjoined as to any person. Appellant's Br. 39; Am. Compl. 38.

To prevail in its facial attack, Metro Washington must show that the statute unjustifiably burdens interstate commerce "in all of its applications*." Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *see also Rancho Viejo, LLC v. Norton*, 323 F.3d 1062, 1077–78 (D.C. Cir. 2003) (applying *Salerno* to a Commerce Clause challenge). "A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745. Metro Washington fails to carry its burden to show that the statute violates the dormant Commerce Clause in all of its applications. The statute applies to "government-assisted project[s] or contract[s]," a term that covers public projects in which the District expends its funds to purchase goods or services, D.C. Code § 2-219.01(5), and the District identifies numerous such public-funded construction projects. Appellee's Br. 39–40. There, the District of Columbia is undoubtedly acting as a "market participant" under *White*, 460 U.S. at 208, and the dormant Commerce Clause is no barrier to imposing worker-residency requirements in those circumstances. "[A] facial challenge must fail where," as here, "the statute has a plainly legitimate sweep." *Wash. State Grange*, 552 U.S. at 449 (internal quotation marks omitted).

14

Metro Washington's view is that *White* does not control because the statute is applicable to projects other than those directly funded by the D.C. government.  True, the statute "can" theoretically be enforced against the contractors on projects not involving the direct expenditure of public funds, Appellant's Br. 30, such as those to which the government provides a tax abatement or administers a federal grant, D.C. Code § 2-219.01(5).  But "[t]he fact that the . . . Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since [the Court] ha[s] not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *Salerno*, 481 U.S. at 745.  Metro Washington has failed to identify particular projects with D.C. government involvement so attenuated as to disqualify it as a market participant and, "[i]n determining whether a law is facially invalid," the court "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange*, 552 U.S. at 449–50) (citing *Raines*, 362 U.S. at 22).  Metro Washington's contention invites precisely that form of forbidden speculation on a "fact-poor record[]." *Sabri*, 541 U.S. at 609.

Accordingly, the court as a matter of law affirms the district court's Rule 12(b)(6) dismissal of Metro Washington's dormant Commerce Clause claim and Rule 12(c) dismissal of the Privileges and Immunities Clause claim.  The court also affirms the district court's grant of summary judgment to the District of Columbia on the inapplicability of the Privileges and Immunities Clause to a corporation.  Further, although Metro Washington has Article III standing as an association, it lacks third-party standing to raise its alternative Privileges and Immunities claim based on incorporation through the Fifth Amendment, and therefore the court dismisses this alternative contention.