# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-1973

_____

Peter Kinder, Missouri Lieutenant Governor; Dale Morris; Samantha Hill; Julie Keathley; M. K.,

*Plaintiffs - Appellants*,

v.

Timothy F. Geithner, Secretary of the United States Department of Treasury; Hilda Solis, Secretary of the United States Department of Labor; Eric H. Holder, Jr., United States Attorney General; Kathleen Sebelius, Secretary of the United States Department of Health and Human Services,

*Defendants - Appellees*.

------------------------------

State of Alabama; State of Alaska; State of Arizona, et al.,

*Amici on Behalf of Appellant*,

American Association of People with Disabilities; Families USA; Friends of Cancer Research; March of Dimes Foundation, et al.,

*Amici on Behalf of Appellee*.

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted:  October 20, 2011
Filed:  October 4, 2012

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A group of seven plaintiffs, including Samantha Hill and Missouri Lieutenant Governor Peter Kinder (acting in his personal capacity), brought this action to challenge various provisions of the Patient Protection and Affordable Care Act ("the Act"). Pub. L. No. 111-148, 124 Stat. 119 (2010). The district court[1] dismissed the suit for lack of standing. Hill and Kinder appeal, and we affirm.

I.

Hill and Kinder filed a lawsuit challenging, among other things, the Act's individual mandate. On appeal, they pursue two claims that were raised in their amended complaint: (1) that Congress exceeded its authority under the Commerce Clause and the taxing power when it promulgated the mandate, and (2) that the mandate violates the Due Process Clause of the Fourteenth Amendment by abrogating their rights under the Missouri Health Care Freedom Act, which provides that "[n]o law or rule shall compel, directly or indirectly, any person, employer, or health care provider to participate in any health care system." Mo. Rev. Stat. § 1.330(1).

The mandate, of course, was the subject of the Supreme Court's recent decision in *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012). The provision at issue requires individuals to maintain "minimum essential" health care coverage. 26 U.S.C. § 5000A. Beginning in 2014, individuals who are not exempt and who do not comply must pay the government a "shared responsibility payment," *id.* § 5000A(b)(1), which the Supreme Court identified as a "tax" for purposes of Congress's taxing power. *Sebelius*, 132 S. Ct. at 2594-2600.

_____

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

The government moved to dismiss the suit, arguing that the district court lacked subject matter jurisdiction and that the complaint failed to state a claim upon which relief could be granted. Hill and Kinder opposed the motion and filed supplemental affidavits with their response. The district court, citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990), reasoned that because the government's motion was a "facial attack" on subject matter jurisdiction, the court should consider only the pleadings. It therefore declined to consider the affidavits. *But cf. Warth v. Seldin*, 422 U.S. 490, 501 (1975).

The district court ruled that neither Hill nor Kinder had standing to sue and dismissed the complaint for lack of jurisdiction. Hill's complaint, as recounted by the court, was that she desires to obtain only high-deductible "major medical" or "catastrophic" health insurance coverage, but that the Act "allows citizens to maintain catastrophic plans only if an individual is under 30 years of age and certifies that his or her premium payment is more than eight percent of his or her household income." Am. Compl. ¶ 140. The district court concluded that Hill's complaint misunderstands the statute. Whereas Hill asserted that she could purchase a catastrophic plan only if she is under the age of thirty *and* meets the test of financial hardship, the statute connects the two criteria with "or" and provides that she need only satisfy one. 42 U.S.C. § 18022(e)(2). Because Hill will be under the age of thirty when the Act takes effect, the district court determined that she would be able to buy a qualifying catastrophic plan, and that she therefore failed to allege an injury. The district court determined that Kinder lacked standing, because he sued in his individual capacity, and he could not allege injury based on his performance of duties as an officer of the State of Missouri.

Hill and Kinder filed a notice of appeal to this court before *Sebelius* was decided. They disputed the district court's ruling on standing and argued on the merits that the individual mandate violates the Federal Constitution. Shortly after this case was argued and submitted, the Supreme Court granted certiorari in *Sebelius*. We held this appeal pending a decision, and the Supreme Court upheld the individual

mandate as a constitutional exercise of Congress's taxing power. *Sebelius*, 132 S. Ct. at 2594-2600.

After the Court's decision, we asked the parties to supplement their briefs with a statement of position on this appeal in light of *Sebelius*. Hill and Kinder continue to pursue their appeal, although it is unclear what relief they now seek. The amended complaint asked the court to declare provisions of the Act unconstitutional and to enjoin the defendants from enforcing those sections against the plaintiffs. The supplemental brief filed by Hill and Kinder in light of *Sebelius* does not specifically urge those remedies or any other that we can readily discern. The government responds that if the plaintiffs have standing, then the judgment should be affirmed based on *Sebelius*.

II.

The district court dismissed the suit on the ground that the plaintiffs lack standing. Although the Supreme Court recently addressed the constitutionality of the Act in *Sebelius*, we are obliged first to consider our jurisdiction. For the reasons that follow, we conclude that the district court correctly ruled that Hill and Kinder lacked standing to sue, and we therefore affirm on that basis.

Article III requires that a plaintiff must have suffered an injury-in-fact as an essential element of standing. Injury-in-fact means an actual or imminent invasion of a concrete and particularized legally protected interest. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The requisite injury "cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotations and citations omitted).

Hill and Kinder do not dispute the district court's decision to resolve the standing question based solely on the allegations in their amended complaint. In other words, they "do not premise their appeal on the trial court restricting its review to the

amended complaint." Appellants' Br. 22 n.5. The appellants urge this court, however, to incorporate their supplemental affidavits for the first time on appeal. We decline to consider them, because Hill and Kinder must show that they "met the challenge to their standing at the time of judgment." *Summers v. Earth Island Inst.*, 555 U.S. 488, 495 n.* (2009). They do not challenge the district court's decision to resolve standing based on the amended complaint, so we review the question based on the same record.

We agree with the district court that the amended complaint does not allege that Hill suffered an Article III injury-in-fact. As we read the amended complaint, Hill allegedly was injured because she "desires to obtain only high-deductible 'major medical' or 'catastrophic' health insurance coverage," Am. Compl. ¶ 138, and the Act denies her the option of purchasing this coverage. *Id.* ¶¶ 140, 144. But Hill *is* eligible to purchase a "catastrophic plan" under § 1302(e) of the Act, because she will be under the age of thirty when the Act goes into effect. *See* 42 U.S.C. § 18022(e)(2). The only injury that Hill alleges in her complaint—that the Act requires her to make a shared responsibility payment if she does not purchase catastrophic coverage that she does not want—will thus not occur.

Hill contends that the district court's analysis is based on a misreading of the amended complaint, and that she alleged a different injury. Hill asserts that her claim of injury is that she does not want to purchase *any* insurance plan, including a catastrophic plan, that would satisfy the requirements of the Act. On this reading, the allegation in paragraph 138 of the amended complaint that Hill "desires to obtain only high-deductible 'major medical' or 'catastrophic' health insurance coverage" referred to a type of major-medical, catastrophic coverage that was available before the passage of the Act, not to the catastrophic plans defined by the Act.

Hill's present argument advances an unnatural reading of the amended complaint, and the district court did not err by failing to discern it. Hill alleged in paragraph 138 that she "desires to obtain only high-deductible 'major medical' or *'catastrophic' health insurance coverage.*" Am. Compl. ¶ 138 (emphasis added). She

placed the word "catastrophic" in quotation marks, thus naturally leading the court to conclude that it was a term drawn from the Act. *See* 42 U.S.C. § 18022(e) (entitled "Catastrophic plan"). Then, in paragraph 140, she alleged that the Act "allows citizens to maintain *catastrophic plans* only if an individual is under 30 years of age *and* certifies that his or her premium payment is more than eight percent of his or her household income." Am. Compl. ¶ 140 (emphases added). "All other individuals," she alleged, "will be required to have at least the minimum essential coverage determined by the Secretary of Health and Human Services." *Id*. Paragraph 144 then alleges that Hill is placed in the category of "all other individuals," because she is "denied the option of purchasing [a] high-deductible, major medical, health insurance policy"—that is, a catastrophic plan. *Id*. ¶ 144. The court naturally understood Hill to mean that she wanted to purchase only a catastrophic plan under the Act, but that the Act forbids her to do so. Given Hill's faulty premise that she may purchase a catastrophic plan only if she meets *both* the requirements of age *and* financial need, *id*. ¶ 140, it made sense for Hill to allege that the Act would deny her the option to purchase "catastrophic" health insurance coverage within the meaning of § 1302(e).

In response to the district court's ruling, Hill asserts that "'catastrophic' health insurance coverage" in paragraph 138 means one thing (a pre-Act "catastrophic" plan), while "catastrophic plans" in paragraph 140 means something else (the "catastrophic plans" defined by § 1302(e) of the Act). No discernible reason for this shift in meaning is apparent on the face of the complaint, and the district court logically read the two paragraphs as referring to the same catastrophic coverage.

Hill also relies on paragraph 141 of the amended complaint, which alleges that the Act "requires [her] to purchase a health-insurance policy that includes, *inter alia*, coverage in the following categories: ambulatory patient services, maternity and newborn care, mental health and substance use disorder services, prescription drugs, laboratory services, and pediatric services including oral and vision care." *Id*. ¶ 141. Hill argues that this paragraph alleges injury because it claims that she must purchase a policy that includes unwanted "essential health benefits," *even if* she is permitted to purchase a "catastrophic plan." But paragraph 141 merely recites that the Act requires

policies to provide certain coverages; it does not connect this information to any alleged injury.

When the complaint ultimately alleged injury in paragraph 144, it asserted that "[a]s the provisions referenced above provide," Hill is "denied the option of purchasing [a] high-deductible, major medical, health insurance policy," and is instead required to purchase a more expensive plan that she does not want. *Id.* ¶ 144. This allegation harks back to the dichotomy established in paragraph 140 between citizens whom the Act allows "to maintain catastrophic plans" under § 1302(e) (one of the "provisions referenced above") and "[a]ll other individuals." *Id.* ¶ 140. If Hill were claiming that she did not want to purchase *any* insurance plan that would satisfy the individual mandate in the Act, including a "catastrophic plan" that would satisfy § 1302(e), then it would have been a simple matter to make that allegation. *Cf. Fednav, Ltd. v. Chester*, 547 F.3d 607, 617 (6th Cir. 2008) ("[W]e simply will not strain to construe the complaint to say by negative implication what it very simply could have said directly."). For these reasons, we conclude that the district court did not err in determining that Hill failed to allege an injury.[2]

Kinder also failed to allege an injury-in-fact. Nowhere in the amended complaint does Kinder assert that he will be uninsured or lack "minimum essential coverage" when this portion of the Act takes effect in January 2014. He therefore did not allege that the Act's individual mandate or minimum coverage provisions would injure him.

---

[2]Hill also urges consideration of paragraph 23 of the complaint, which alleged that she had "no need or desire to purchase or pay for insurance coverage covering infant and child care . . . and over 200 other preventative services." Am. Compl. ¶ 23. This paragraph, however, was not incorporated into the counts of the complaint that allege the constitutional claims, and Hill did not even cite the allegation in the district court when opposing the defendants' motion to dismiss.

\* \* \*

Because neither Hill nor Kinder pleaded sufficient facts to establish an injury-in-fact, both plaintiffs lack standing to sue, and there is no Article III case or controversy.  The judgment of the district court is affirmed.

_____