# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20039

United States Court of Appeals
Fifth Circuit

**FILED**

April 24, 2015

Lyle W. Cayce
Clerk

STEVEN F. HOTZE, M.D.; BRAIDWOOD MANAGEMENT, INCORPORATED,

      Plaintiffs - Appellants

v.

SYLVIA MATHEWS BURWELL, SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES; JACOB J. LEW, SECRETARY, DEPARTMENT OF TREASURY,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before KING, JOLLY, and COSTA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal presents an Origination Clause[1] challenge to two provisions of the Patient Protection and Affordable Care Act (ACA)—the "individual mandate," which imposes a penalty on non-exempt individuals who lack qualifying health insurance; and the "employer mandate," which imposes a tax on certain employers who fail to offer "affordable" health insurance to their

---

[1] "All bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills." U.S. Const. art. I, § 7, cl. 1.

No. 14-20039

employees and their employees' dependents. The plaintiffs are Steven F. Hotze, M.D., and Braidwood Management, Inc., Dr. Hotze's employer. The district court held that the ACA was enacted in conformance with the Origination Clause, and thus dismissed the plaintiffs' complaint on its merits. We never reach the merits, however, and find it unnecessary to address the arguments relating to the Origination Clause. Instead, we conclude that the district court lacked subject-matter jurisdiction to entertain the complaint, because Dr. Hotze failed adequately to allege an injury that would give him standing to challenge the individual mandate and because Braidwood's challenge to the employer mandate is barred by the Anti-Injunction Act (AIA), 26 U.S.C. § 7421(a), as a suit seeking to enjoin the collection of a federal tax. Accordingly, we VACATE the district court's judgment and REMAND this case with instructions to dismiss for lack of subject-matter jurisdiction.

I.

Below, we will initially sketch the legislation and legislative background that are the subject of this appeal. We will then refer to the Supreme Court's decision in *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012) (*NFIB*), and then to the particular facts before us, all before getting to the issues that finally decide this appeal.

A.

1.

In October 2009, the House of Representatives introduced H.R. 3590, called the "Service Members Home Ownership Tax Act of 2009" (SMHOTA). The SMHOTA spanned only a few pages and primarily related to extending home-ownership-related tax credits to members of the military. The House unanimously passed the SMHOTA the day after it was introduced, and the bill went to the Senate.

2

No. 14-20039

Once there, the Senate proposed Amendment No. 2786 to H.R. 3590. Amendment No. 2786 preserved H.R. 3590's bill number and its enacting clause, which read: "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled." Otherwise, the Senate struck the language of the SMHOTA in its entirety and substituted the language of the ACA. The ACA was more than 2,000 pages long and constituted a reform of the nation's health-insurance system that aimed to "achieve[] near universal coverage," "strengthen[] the private employer-based health insurance system," and "lower health insurance premiums." 42 U.S.C. § 18091(2)(D), (F).

The Senate passed H.R. 3590 as amended and returned it to the House. No member of the House filed a "blue slip," the mechanism generally used by members to object to bills raising Origination Clause problems. The House passed the ACA on March 21, 2010, and the President signed it into law two days later.

2.

The ACA is a "sweeping and comprehensive Act." *Florida v. U.S. Dep't of Health & Human Servs.*, 648 F.3d 1235, 1241 (11th Cir. 2011). Most of its provisions are beyond the scope of this appeal. A brief overview of several of its provisions, however, will lend context to the appeal before us.

As mentioned, the ACA was designed both to "achieve[] near universal coverage" and lower the costs of that coverage. 42 U.S.C. § 18091(2)(D), (F). Congress pursued the first of these goals in part by barring some of the health-insurance industry's basic underwriting practices. For instance, the ACA's "guaranteed issue requirement" bars insurers from denying coverage to individuals with preexisting health conditions. *Id.* §§ 300gg-1(a), 300gg-3. Similarly, the "community rating requirement" bars insurers from charging higher rates to individuals based on medical history. *Id.* § 300gg(a)(1). Insofar

3

as these practices "prevented individuals from obtaining and maintaining health insurance," *Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 536 (6th Cir. 2011), they were antithetical to the ACA's goal of near-universal coverage.

Standing alone, however, these provisions aimed at increasing coverage most likely would have increased costs. That is because, by prohibiting these underwriting practices, Congress ran the risk that "many individuals would wait to purchase health insurance until they needed care," which would drive up health-insurance premiums. *See* 42 U.S.C. § 18091(2)(I). The ACA attempts to address this "adverse selection" problem by "influenc[ing]" individuals who might otherwise forego health insurance—individuals who tend to be healthy and make fewer claims—to purchase it. *NFIB*, 132 S. Ct. at 2596; *see also* 42 U.S.C. § 18091(2)(I). One way in which it does this is by requiring most individuals either to obtain health insurance or pay a "penalty." 26 U.S.C. § 5000A. Another is by requiring employers, under some circumstances, either to provide their employees with "affordable" health-insurance coverage or pay a "tax." *Id.* § 4980H. It is these provisions— commonly referred to as the "individual mandate" and the "employer mandate," respectively—that the plaintiffs challenge in this appeal.

### 3.

The individual mandate imposes a "penalty" on individuals who fail to obtain qualifying health insurance, termed "minimum essential coverage." 26 U.S.C. § 5000A(a)–(b). The mandate exempts some individuals, including those with religious objections, undocumented aliens, and prisoners. *Id.* § 5000A(d). "Minimum essential coverage" is defined to include, among other things, coverage under an employer-sponsored plan, so long as the plan does not provide exclusively for excepted benefits, such as dental-only coverage. *See*

*id.* § 5000A(f)(1)(B), (2)–(3).[2]  The Secretary of the Treasury is directed to collect the individual-mandate penalty "in the same manner" as a tax, except that the Secretary may not enforce the penalty using criminal prosecutions, liens, or levies.  *Id.* § 5000A(g).

The employer mandate requires "applicable large employer[s]" who fail to provide "affordable" health-insurance coverage to their employees to pay a "tax."  *Id.* § 4980H(a), (c)(7).  An "applicable large employer" is an employer who employed an average of at least 50 full-time employees during the preceding year.  *Id.* § 4980H(c)(2).  As for "affordable" health-insurance coverage, that concept is related to, but different from, the concept of "minimum essential coverage" under § 5000A.  To constitute "affordable" health-insurance coverage, an employer's plan must both provide "minimum essential coverage" and meet two further requirements: it must (1) provide "minimum value" (that is, cover at least 60 percent of the total allowed cost of benefits expected to be incurred under the plan); and (2) cost employees no more than 9.5 percent of household income.  *See id.* § 36B(c)(2)(C)(i)–(ii).[3]  Like the individual-mandate penalty, the Secretary of the Treasury is directed to collect the employer-mandate tax "in the same manner" as other taxes.  *Id.*

---

[2] Specifically, "minimum essential coverage" means, among other things, "coverage under an eligible employer-sponsored plan."  26 U.S.C. § 5000A(f)(1)(B).  An "eligible employer-sponsored plan," in turn, means "any . . . plan or coverage offered in the small or large group market within a State."  *Id.* § 5000A(f)(2)(B).  For the "excepted benefits," § 5000A cross-references 42 U.S.C. § 300gg-91(c), which lists, among others, dental or vision benefits.  *Id.* § 5000A(f)(3) (excepting from the definition of "minimum essential coverage" insurance that provides only for benefits described in 42 U.S.C. § 300gg-91(c)(1)–(4)).

[3] Specifically, an employer who offers "minimum essential coverage" to its employees nonetheless must pay the employer-mandate tax if one or more of its full-time employees was allowed "an applicable premium tax credit" for enrolling in one of the ACA-established health-insurance exchanges.  26 U.S.C. § 4980H(b)(1).  Individuals with employer-provided plans are eligible for a credit if, among other things, "the employee's required contribution . . . with respect to the plan exceeds 9.5 percent of the [employee's] household income" or the employer-provided "plan's share of the total allowed costs of benefits provided under the plan is less than 60 percent of such costs."  *Id.* § 36B(c)(2)(C)(i)–(ii).

4980H(d)(1).  Unlike with the individual-mandate penalty, however, there are no limitations on the Secretary's authority to enforce the employer-mandate tax using criminal prosecutions, liens, or levies.  *Id.*  The employer mandate initially was scheduled to take effect in 2014, but its full implementation has been delayed until 2016.

## B.

Before we reach the particular facts of this case, one additional item of legal context merits discussion.  In 2012, the Supreme Court decided *NFIB*, in which it considered the constitutionality of the individual mandate.  The *NFIB* plaintiffs asserted that the individual mandate was unconstitutional because it was beyond the power of Congress to enact under the Commerce Clause.  *See* 132 S. Ct. at 2580–81.  Before the Court could reach the merits of the *NFIB* challenge, however, it had to ensure that it had jurisdiction to do so.  *Id.* at 2582.  Jurisdiction was in question because of the Anti-Injunction Act, which strips federal courts of jurisdiction over "suit[s] for the purpose of restraining the assessment or collection of any tax."  26 U.S.C. § 7421(a).  The Court held that, because Congress labeled the exaction imposed by the individual mandate a "penalty," not a "tax," it was not a "tax" for the purposes of the AIA.  *Id.* at 2582–84.  Accordingly, the Court concluded that the AIA's jurisdictional bar was not triggered, and it turned to the merits.  *Id.* at 2584.

On the merits, the *NFIB* Court agreed with the plaintiffs that Congress lacked power under the Commerce Clause to enact the individual mandate.  *Id.* at 2585–91.  Nonetheless, Chief Justice Roberts's controlling opinion for the Court upheld the individual mandate on the ground that it could "reasonably be characterized as a tax," and thus was constitutional as an exercise of Congress's power under the Taxing Clause.  *Id.* at 2593–600.  Although the Court had just held that the individual mandate was a penalty, not a "tax," for the purposes of the AIA, the Chief Justice explained that the AIA inquiry

No. 14-20039

differs from the constitutional one: in the AIA context, he said, the question is whether Congress intended for the exaction to be treated as a "tax" subject to the AIA; in the constitutional context, by contrast, the question is whether the exaction really is, "functional[ly]," a tax. *Id.* at 2594–95. Because, its label notwithstanding, the individual mandate exhibited many of the characteristics of a tax, the Court held that the Taxing Clause justified its enactment. *Id.* at 2595–97, 2600.

C.

We turn now to the particular facts of this appeal. The plaintiffs—Steven F. Hotze, M.D., and Braidwood Management, Inc., Dr. Hotze's employer—brought this suit challenging, respectively, the individual and employer mandates. The underpinning of their complaint is essentially that the *NFIB* Court should be kept to its word: if, as the *NFIB* Court held, the individual mandate is a tax, then it (along with the employer mandate) is subject to all of the Constitution's special constraints on taxes, such as the Origination Clause. And because, the complaint says, the mandates violate the Origination Clause, they must be declared unenforceable.

Specifically, the plaintiffs' complaint is drafted as follows: Beginning with allegations pertaining to how the plaintiffs are affected by the mandates, the complaint alleges that Dr. Hotze and Braidwood are covered by their respective mandates—Dr. Hotze, because he is a "nonexempt individual[]" for the purposes of the individual mandate; and Braidwood, because it has more than 50 employees. The complaint then alleges that "Braidwood has successfully provided a voluntary 'high-deductible' health coverage plan for its employees," including Dr. Hotze, but that, now, because of the individual and employer mandates, "Plaintiffs Hotze and Braidwood must make decisions soon about whether to incur the new penalties imposed by ACA or switch to more expensive and less desirable health insurance coverage pursuant to ACA

requirements." Thus, the complaint alleges that the plaintiffs have suffered an injury attributable to the individual and employer mandates because they are covered by those mandates, and because they are put to the choice that those mandates impose—obtain or provide health insurance, or pay a monetary exaction. Importantly, however, the complaint at no point clearly alleges that the health-insurance policy that Braidwood already provides to Dr. Hotze fails to satisfy the mandates.

The complaint then turns to the substance of the plaintiffs' claims: The individual and employer mandates violate both the Origination Clause and the Takings Clause of the Constitution. The Origination Clause provides that "[a]ll Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills." U.S. Const. art. I, § 7, cl. 1. Citing *NFIB*, the complaint asserts that the ACA is a "Bill[] for raising Revenue" because it levies taxes; specifically, taxes in the form of the exactions imposed by the individual and employer mandates. Furthermore, according to the complaint, the ACA unconstitutionally originated in the Senate because it originated in the Senate's Amendment No. 2786, an amendment that was not "germane" to the House bill it purported to amend—H.R. 3590, i.e., the SMHOTA. Absent germaneness of the amendment to the enacted House bill, the complaint alleges, Amendment No. 2786 must be considered an unconstitutional "originat[ion]" of a new revenue bill instead of a mere "Amendment[]" of H.R. 3590.[4]

The defendants moved to dismiss the complaint for lack of jurisdiction (including lack of Article III standing); and, alternatively, for failure to state a

---

[4] The district court expressed concern that the plaintiffs had waived any germaneness argument. *Hotze v. Sebelius*, 991 F. Supp. 2d 864, 882 (S.D. Tex. 2014). Because we do not reach the merits of this appeal, whether this argument was preserved has no relevance to our analysis.

No. 14-20039

substantive claim (i.e., on the ground that the ACA was passed in conformance with the Origination Clause).  Respecting jurisdiction, the defendants asserted two arguments: First, they argued that the plaintiffs lacked standing to challenge the mandates because the complaint failed to state why the health-insurance policy that Braidwood currently provides to Dr. Hotze does not satisfy the respective mandates.  Second, relating only to the employer mandate, the defendants argued that the AIA barred any challenge to that mandate.  Regarding the substantive merits of the plaintiffs' claims, the defendants argued that the Origination Clause challenge was unsupported by the record.  The ACA is not an Origination Clause-triggering "Bill[] for raising Revenue," the defendants argued, because it was enacted for the primary purpose of expanding health insurance, not for raising revenue.  Moreover, the defendants argued, even assuming the legislation was a revenue bill, it did in fact originate in the House because, regardless of whether the House bill was "gutted" by the Senate, the Origination Clause imposes no "germaneness" requirement on Senate amendments so long as the bill originated in the House as a bill for raising revenue.

Considering these arguments, the district court held that it had jurisdiction, that the bill was not a "Bill[] for raising Revenue," and that, even if it were, it had originated in the House or Representatives and was therefore constitutional.  The district court therefore dismissed the plaintiffs' complaint.

II.

The standard of review for all issues in this appeal is de novo.  *Lashley v. Pfizer*, 750 F.3d 470, 473 (5th Cir. 2014) ("We review grants of Rule 12(b)(6) motions to dismiss de novo."); *El Paso CPG Co. v. United States*, 748 F.3d 225, 228 (5th Cir. 2014) ("Subject-matter jurisdiction presents a question of law that this court reviews de novo.").

No. 14-20039

III.

On appeal, the defendants argue that the plaintiffs' complaint should be dismissed, either because we lack subject-matter jurisdiction to entertain it or because, as the district court held, the ACA was enacted in conformance with the Origination Clause and thus is not unconstitutional. We recognize and must respect the firmly established and time-honored principle that "this [c]ourt must avoid deciding a constitutional issue 'if there is some other ground upon which the case may be disposed of.'" *St. Joseph Abbey v. Castille*, 712 F.3d 215, 220 (2013) (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)). Similarly, because "[j]urisdiction is *power* to declare the law," if we lack jurisdiction, we may not address the merits, but must only "announc[e] the fact and dismiss[] the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (emphasis added) (internal quotation marks omitted). After due consideration of the arguments presented, we conclude that the district court lacked subject-matter jurisdiction to entertain the plaintiffs' complaint. Accordingly, we vacate the district court's judgment and remand the case with instructions to dismiss the complaint for lack of jurisdiction. We do not—indeed, we *may* not—reach the merits of the parties' Origination Clause arguments. *See id.*

Specifically, the defendants' jurisdictional argument is that two procedural obstacles—one constitutional, one statutory—prevent our reaching the merits of this appeal. We agree. First, we conclude that Dr. Hotze has failed adequately to allege standing under Article III of the Constitution to challenge the individual mandate. Second, we agree that Braidwood's challenge to the employer mandate is barred by the Anti-Injunction Act, 26 U.S.C. § 7421(a). To begin our discussion, we first set out our conclusions.

Regarding standing, the complaint does not adequately allege that the individual mandate has caused Dr. Hotze to suffer an Article III-required

10

"injury in fact." *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The facts alleged in the complaint suggest that Dr. Hotze currently meets the requirements of the individual mandate; indeed, the plaintiffs have never clearly stated otherwise.  Thus, Dr. Hotze cannot establish standing on the most straightforward ground—that the individual mandate requires him to conform his conduct such that, to comply, he must either purchase health insurance or pay the penalty.  *See, e.g., Sissel v. U.S. Dep't of Health and Human Servs.*, 760 F.3d 1, 4–5 (D.C. Cir. 2014).  Furthermore, Dr. Hotze's other standing arguments depend on injuries that are either too "speculative," *see Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143 (2013), or too "generalized."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Thus, although we do not doubt that many have suffered an injury in fact at the hands of the individual mandate, the plaintiffs' complaint does not adequately allege that Dr. Hotze is among them.

Regarding the employer mandate, we conclude that the AIA bars Braidwood's challenge because it constitutes a "suit for the purpose of restraining the assessment or collection of a[] tax" under 26 U.S.C. § 7421(a); and, as such, we lack subject-matter jurisdiction to entertain it.  In *NFIB*, the Supreme Court made clear that (1) the dispositive factor in determining whether a governmental exaction is a "tax" for the purposes of the AIA is whether Congress intended for the AIA to apply; and (2) the best indicator of whether Congress intended for the AIA to apply is the label that Congress gave to the exaction.  S*ee NFIB*, 132 S. Ct. at 2582–83.  Here, Congress labeled the employer-mandate exaction a "tax."  *See, e.g.,* 26 U.S.C. § 4980H(c)(7).  Furthermore, there is no compelling evidence that Congress intended for the employer-mandate exaction to be treated as something other than a "tax" for the purposes of the AIA.  Accordingly, the AIA prevents us from exercising jurisdiction over Braidwood's challenge to the employer mandate.

No. 14-20039

A.

First, we turn to whether we have jurisdiction to entertain Dr. Hotze's effort to dislodge the individual mandate. "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper*, 133 S. Ct. at 1146. "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Standing is a corollary of the constitutional system of separation of powers; that is, "it is founded in concern about the proper—and properly limited—role of courts in a democratic society." *Warth*, 422 U.S. at 498. It is the court's role to decide only genuine disputes between parties who appear before it with genuine grievances affecting directly those parties. It is the broader role of the democratically elected Congress to enact laws speaking to the general citizenry. For this reason, the Supreme Court has instructed that a court's inquiry into standing should be "especially rigorous when reaching the merits of the dispute would force [it] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper*, 133 S. Ct. at 1147.

The general requirements to satisfy standing before federal courts are simply stated: "[A] plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). But not just any injury constitutes an Article III-required injury in fact. Instead, an injury sufficient to satisfy Article III must be "concrete" and "actual" or "imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Moreover, the injury must be "particularized," *see Lujan*, 504 U.S. at 560 (1992), not a "'generalized grievance' shared in substantially equal measure by all or a large class of citizens." *Warth*, 422 U.S. at 499; *see also*

*LULAC v. City of Boerne*, 659 F.3d 421, 428 (5th Cir. 2011) ("[A] plaintiff raising only a generally available grievance . . . does not state an Article III case or controversy and therefore lacks standing." (internal quotation marks omitted)).

This case was dismissed at the pleading stage of the proceedings.  Here "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing.  *Lujan*, 504 U.S. at 561 (internal quotation marks omitted).  Thus, we will not dismiss for lack of standing if we reasonably can infer from the plaintiffs' general allegations that Dr. Hotze has suffered an injury in fact, fairly traceable to the individual mandate, and redressable by a ruling in his favor.  *See Tex. Cable & Telecommunications Ass'n v. Hudson*, 265 F. App'x 210, 216 (5th Cir. 2008) ("[If] the facts necessary for . . . harm [to] the petitioners reasonably [can] be inferred, . . . the injury-in-fact standing requirement [is] satisfied."); *see also Bennett v. Spear*, 520 U.S. 154, 168 (1997) (rejecting the argument that the complaint's lack of detail meant that the plaintiffs failed to establish an injury because "it is easy to presume specific facts under which petitioners will be injured").  Yet, we emphasize that this inference must be *reasonable*—"standing is not created by a declaration in court pleadings," *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 209 (5th Cir. 2011) (internal quotation marks omitted); so if the plaintiff does not carry his burden "clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute," then dismissal for lack of standing is appropriate. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotation marks omitted); *see also Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990) ("A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing.").

No. 14-20039

Finally, in evaluating whether the plaintiffs adequately have alleged Dr. Hotze's standing, we are informed by analogous cases from other circuits. We are not the first court to consider whether an individual has adequately alleged standing for the purposes of challenging the individual mandate; to be sure, on at least five occasions, other circuits have considered the issue. In the three cases in which other circuits found standing, the plaintiffs alleged that they lacked qualifying health insurance—what, again, the statute calls "minimum essential coverage"—and that they did not qualify for any exemption from the mandate. *See Sissel*, 760 F.3d at 4–5; *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 90 (4th Cir. 2013); *Thomas More Law Ctr.*, 651 F.3d at 535–39. In the two cases in which other circuits did not find standing, the plaintiffs failed to allege either that they lacked minimum essential coverage, or that they were not exempt from the mandate, or both. *See Baldwin v. Sebelius*, 654 F.3d 887, 879–80 (9th Cir. 2011); *Kinder v. Geithner*, 695 F.3d 772, 776–78 (8th Cir. 2011); *N.J. Physicians, Inc. v. President of the U.S.*, 653 F.3d 234, 239–41 (3d Cir. 2011). The caselaw, then, suggests a commonsense distinction under which non-exempt plaintiffs who lack minimum essential coverage ordinarily will have standing to challenge the individual mandate, while plaintiffs who are exempt from the mandate or who already have minimum essential coverage ordinarily will not have an injury in fact for standing purposes.

1.

With these distinctions in mind, we turn to the allegations in the plaintiffs' complaint. Dr. Hotze's primary standing allegations, again, are that he is a "nonexempt individual[]" for the purposes of the individual mandate and that he "must make decisions soon about whether to incur the new penalties imposed by the ACA or switch to more expensive and less desirable health insurance coverage pursuant to the ACA requirements." The thrust of these allegations seems to be that Dr. Hotze is like the plaintiffs in the cases

14

in which other circuits have found standing—that is, that he is not exempt from the mandate, that he does not now have the minimum essential coverage required by the mandate, and thus that the mandate requires him to choose between purchasing minimum essential coverage, on the one hand, and paying the penalty for not doing so, on the other.  Of course, as the defendants are quick to point out, the complaint does not explicitly *state* that Dr. Hotze lacks the minimum essential coverage required by the mandate; it says only, vaguely, that he "must make decisions soon" regarding his compliance.  Still, this allegation arguably *implies* that Dr. Hotze lacks minimum essential coverage, which at the pleading stage may be sufficient.  *See Tex. Cable & Telecommunications Ass'n*, 265 F. App'x at 216 ("[If] the facts necessary for . . . harm [to] the petitioners reasonably [can] be inferred, . . . the injury-in-fact standing requirement [is] satisfied." (citing *Bennett*, 520 U.S. at 168)).

Other allegations in the complaint, however, negate the implication that Dr. Hotze lacks the minimum essential coverage required by the mandate.  As we have explained, *see supra* pp. 4–5 & n.2, "minimum essential coverage" under § 5000A includes almost any employer-provided insurance policy; such coverage fails to satisfy the mandate only if it provides exclusively for *excepted* benefits, such as dental-only coverage.  *See* 26 U.S.C. § 5000A(f)(1)(B), (2)–(3).  The complaint alleges that Dr. Hotze has health insurance through his employer (his co-plaintiff Braidwood).  The plaintiffs never hint—either in their complaint, their briefs, or oral argument—that Dr. Hotze's employer-provided insurance provides exclusively for excepted benefits.  Thus, contrary to the plaintiffs' implied, conclusory allegation that Dr. Hotze lacks minimum essential coverage, the *facts* alleged in the complaint demonstrate that his policy complies with the individual mandate, and thus that he is not subject to the penalty for violating it.  *See FW/PBS, Inc.*, 493 U.S. at 231 (describing the

plaintiff's burden as being to "clearly . . . allege *facts* demonstrating" standing (emphasis added)).

Given the complaint's allegation that Dr. Hotze has an employer-provided health-insurance plan, coupled with the complaint's failure to allege that this plan falls into the narrow category of employer-provided plans that do not constitute "minimum essential coverage" under § 5000A, we cannot "reasonably . . . infer[]" that Dr. Hotze lacks the minimum essential coverage required by the mandate. *See, e.g., Tex. Cable & Telecommunications Ass'n*, 265 F. App'x at 216. This is particularly so in the light of our duty to engage in "especially rigorous" scrutiny of a plaintiff's standing allegations before reaching the merits of a challenge to a federal statute's constitutionality. *See Clapper*, 133 S. Ct. at 1147. Accordingly, we hold that Dr. Hotze has failed to demonstrate standing on the most straightforward ground—that is, that the ACA forces him to choose between paying the penalty and purchasing compliant insurance. *See, e.g., Baldwin*, 654 F.3d at 879 (finding standing to challenge the individual mandate inadequately alleged because the plaintiff "does not aver that he currently lacks qualifying health insurance so that he would be non-compliant when the Act goes into effect"); *Kinder*, 695 F.3d at 778 ("Kinder . . . failed to allege an injury-in-fact. Nowhere in the . . . complaint does Kinder assert that he will be uninsured or lack 'minimum essential coverage' when th[e individual mandate] takes effect . . . .")

## 2.

Perhaps recognizing that the ACA does not force Dr. Hotze to make a choice, or to pay a penalty, because his insurance satisfies the individual mandate, the plaintiffs emphasize more circuitous arguments for injury in fact. In particular, the plaintiffs stress that when the employer mandate takes effect, Braidwood will be forced to provide "less desirable" insurance to Dr. Hotze and its other employees. Although it is not immediately apparent how

this argument pertains to *Dr. Hotze's* standing to challenge the *individual* mandate, the argument seems to be as follows: Braidwood's providing "less desirable insurance" will result in an injury to Dr. Hotze attributable to the individual mandate, the plaintiffs say, because Braidwood's changing its plan may prompt Dr. Hotze to drop his employer-provided insurance, which he will not be able to do without violating the individual mandate. This argument asserts an injury that is too "conjectural or hypothetical" to constitute the Article III-required injury in fact. *Summers*, 555 U.S. at 493.

It is well settled that "[a] claim of injury generally is too conjectural or hypothetical to confer standing when the injury's existence depends on the decisions of third parties." *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009); *see also Clapper*, 133 S. Ct. at 1150 (citing the Court's "usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors"); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977) (finding standing in part because the plaintiff's injury was "not dependent on speculation about the possible actions of third parties not before the court"). The existence of Dr. Hotze's alleged injury rests on just such a third-party decision: Dr. Hotze will be injured by the individual mandate, the plaintiffs say, because, once the employer mandate takes effect, Braidwood may offer him less desirable insurance, which may prompt him to drop his employer-provided insurance, which he will not be able to do without violating the individual mandate. Speculation about a decision made by a third party—Braidwood—constitutes an essential link in this chain of causation. In order to fill in the blanks of the plaintiffs' argument, we must assume not only that the insurance that Braidwood currently offers its employees does not satisfy the employer mandate, but, further, that Braidwood will respond to the employer mandate by offering "less desirable" insurance. Yet it is equally probable that Braidwood would choose any number of other courses, including

simply continuing to provide the same, apparently satisfactory, insurance while incurring the employer-mandate tax.  Because the plaintiffs give no reason to conclude that Braidwood will choose to change its insurance offering instead of continuing to offer its current insurance while incurring the employer-mandate tax, any injury depending on this choice is certainly not concrete and is certainly too speculative to satisfy Article III.

3.

Finally, the plaintiffs argue that Dr. Hotze suffers an injury, and thus has standing, because "insurance premiums have already increased in the market due to ACA."  This argument fails for two reasons.  First, increased health-insurance premiums is a paradigmatic "generalized grievance."  *See, e.g., LULAC*, 659 F.3d at 428.   "The individual mandate requires most Americans to maintain" health insurance, *NFIB*, 132 S. Ct. at 2580, so most Americans are, in some sense, injured when health-insurance premiums increase.  Such an injury, which is "shared in substantially equal measure by . . . a large class of citizens," is insufficient to confer standing.  *Warth*, 422 U.S. at 499.  Next, even if increased health-insurance premiums were sufficiently particularized to constitute a cognizable injury in fact, that injury must be "fairly traceable" to the statutory provision that Dr. Hotze seeks to challenge— the individual mandate.  *Lujan*, 504 U.S. at 560.  The plaintiffs do not explain how increased health-insurance premiums are traceable to the individual mandate, instead of to the ACA generally.  And indeed, that proposition would require explaining, given that the individual mandate was designed (whatever its actual effect) to *offset* the higher premiums that might otherwise result from the ACA.  *See supra* pp. 3–4; *see also NFIB*, 132 S. Ct. at 2585 ("[T]he [individual] mandate forces into the insurance risk pool more healthy individuals . . . .  This allows insurers to subsidize the costs of covering the unhealthy individuals the reforms require them to accept."); 42 U.S.C.

§ 18091(2)(I) ("By significantly increasing health insurance coverage, the [individual mandate] will minimize . . . adverse selection and broaden the health insurance risk pool to include healthy individuals, which will lower health insurance premiums.").

\* \* \*

The complaint does not unmistakably allege that Dr. Hotze lacks minimum essential coverage. Furthermore, the complaint alleges that Dr. Hotze has employer-provided insurance. We therefore cannot reasonably infer an injury fairly traceable to the individual mandate. Because we also cannot "create [our] own jurisdiction by embellishing otherwise deficient allegations of standing," *Whitmore*, 495 U.S. at 155–56, and because the plaintiffs' other arguments for standing, which do not depend on Dr. Hotze's lack of insurance coverage, fail also, the plaintiffs have not adequately alleged that Dr. Hotze has standing to challenge the individual mandate.

B.

We now turn to address Braidwood's challenge to the employer mandate. As we have explained, *see supra* pp. 5–6 & n.3, the employer mandate is the ACA provision that imposes a "tax" on certain employers who fail to provide "affordable" health-insurance coverage to their employees. 26 U.S.C. § 4980H. The defendants contend that the Anti-Injunction Act bars Braidwood's challenge. Under the AIA, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). The AIA "protects the Government's ability to collect a consistent stream of revenue, by barring litigation to enjoin or otherwise obstruct the collection of taxes." *NFIB*, 132 S. Ct. at 2582. Federal courts lack subject-matter jurisdiction over suits to which the AIA applies. *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 5 (1962). Because of the AIA, therefore, "taxes can ordinarily be challenged only after they are

paid, by suing for a refund." *NFIB*, 132 S. Ct. at 2582 (citing *Enochs*, 370 U.S. at 7–8).

No party disputes that Braidwood's challenge to the employer mandate has "the purpose of restraining the assessment or collection of" the exaction imposed under that mandate. *See* 26 U.S.C. § 7421(a). The question, therefore, is whether that exaction constitutes a "tax" for the purposes of the Anti-Injunction Act. The defendants cite *NFIB*, in which, they acknowledge, the Supreme Court declined to apply the AIA to a challenge to the individual mandate. 132 S. Ct. at 2582–84. According to the defendants, however, *NFIB* stands for the proposition that the applicability of the AIA turns on Congress's intent. Thus, the defendants' argument continues, because Congress labeled the employer-mandate exaction a "tax," it intended for the AIA to apply to the employer mandate, even if it does not apply to the individual mandate. The plaintiffs respond that the *NFIB* Court's logic in refusing to apply the AIA to a challenge to the individual mandate "obviously carries over" to this challenge to the employer mandate, and thus that *NFIB* renders the defendants' AIA argument a "nonstarter." The plaintiffs further direct us to *Liberty University*, in which the Fourth Circuit held that the employer-mandate exaction did not constitute a "tax" for the purposes of the AIA. 733 F.3d at 87–89.

1.

Given the centrality of the Supreme Court's *NFIB* decision to both sides' arguments, we begin there. As we have discussed, in *NFIB*, the Court considered whether the exaction imposed by the individual mandate was a "tax" for the purposes of the AIA. 132 S. Ct. at 2582–84. In so doing, the Court made clear that the dispositive question was not whether the individual-mandate exaction was *actually*, in the constitutional sense, a "tax." Instead, because the AIA and the ACA are both "creatures of Congress's own creation," the dispositive question was whether Congress intended for the individual-

mandate exaction to be considered a "tax" under the AIA. *Id.* at 2583. Observing that "the best evidence of Congress's intent is the statutory text," the Court focused on the text of the individual mandate. *Id.* There it found that Congress "chose to describe" the individual-mandate exaction "not as a 'tax,' but as a 'penalty.'" *Id.* Given this label, and given its contrast to the many other ACA-created exactions that Congress chose to label as "taxes," the Court concluded that the AIA did not bar the plaintiffs' challenge to the individual mandate. *Id.* at 283–84.

Separating ourselves from the plaintiffs' characterization of the defendants' argument as a "nonstarter," we think *NFIB* requires a holding in the defendants' favor. Like the individual-mandate exaction, the employer-mandate exaction functions like a tax—it is collected by the IRS "in the same manner" as a tax, *see* 26 U.S.C. § 4980H(d)(1), and the funds raised go to the general Treasury. But unlike the individual-mandate exaction, the employer-mandate exaction is also *labeled* as a tax. The employer mandate appears in 26 U.S.C. § 4980H. Subsection (c)(7) of § 4980H, entitled "Tax nondeductible," addresses the "denial of deduction for *the tax imposed by this section.*" *Id.* § 4980H(c)(7) (emphasis added). Similarly, § 4980H(b)(2) refers to "[t]he aggregate amount of *tax* determined" that an employer must pay because of the mandate. *Id.* § 4980H(b)(2) (emphasis added). Finally, another provision of the ACA requires "[t]he Secretary [of HHS to] establish a separate appeals process for employers who are notified . . . that the employer may be liable for a *tax* imposed by section 4980H of Title 26." 42 U.S.C. § 18081(f)(2)(A) (emphasis added). As said by the Supreme Court in *NFIB*, textual evidence is "the best evidence" of whether an exaction constitutes a "tax" for the purposes of the AIA. *See NFIB*, 132 S. Ct. at 2583. And here, unlike the individual mandate, the text of the ACA explicitly indicates that the employer-mandate exaction indeed is a "tax."

No. 14-20039

2.

a.

The plaintiffs' arguments to the contrary rely on *Liberty University*. There, the Fourth Circuit held that the employer-mandate exaction was not a "tax" for AIA purposes, despite the ACA's repeated references to it as such. *Liberty Univ.*, 733 F.3d at 87–89. In its reasoning, the *Liberty University* court relied heavily on its observation that the ACA also refers to the employer-mandate exaction, in § 4980H and elsewhere, as an "assessable payment." *Id.* at 87–88. Given this inconsistency, the *Liberty University* court concluded that it could not "place much significance" on Congress's use of the word "tax." *Id.* at 88. The court then cited other reasons counseling against finding that the employer mandate was an AIA "tax." First, the court asserted, "Congress did not otherwise indicate that the employer mandate exaction qualifies as a tax for AIA purposes, though of course it could have done so." *Id.* The court continued, suggesting that to hold that the AIA barred pre-enforcement challenges to the employer mandate would "lead to an anomalous result" because the Supreme Court in *NFIB* held that the AIA did *not* bar pre-enforcement challenges to the individual mandate. *Id.* at 88–89. The *Liberty University* court concluded that "[i]t seems highly unlikely that Congress meant . . . that the mandates should be treated differently for purposes of the AIA's applicability." *Id.* at 88.

b.

We do not find *Liberty University* persuasive. The *Liberty University* court's primary error, we think, was in interpreting the statutory references to the employer-mandate exaction as an "assessable payment" in a way that nullified the references to it as a "tax." The terms "tax" and "assessable payment" do not present a contradiction in the use of terms, and the *Liberty University* court offers no reasons for treating them as if they did. *See Halbig*

*v. Sebelius*, 27 F. Supp. 3d 1, 14 (D.D.C. 2014) (disagreeing with *Liberty University* in part because "the natural conclusion to draw from Congress's interchangeable use of the terms 'assessable payment' and 'tax' in Section 4980H is simply that Congress saw no distinction between the two terms") *rev'd on other grounds sub nom. Halbig v. Burwell*, 758 F.3d 390 (D.C. Cir. 2014). To be clear, we do not dogmatically assert that "taxes" and "assessable payments" are one and the same in all occasional uses, or that "taxes" are invariably included in a larger category of "assessable payments." The point we make is that, given the *NFIB* Court's emphasis on an exaction's label, a compelling reason is needed to ignore Congress's labeling the employer-mandate exaction a "tax"—and Congress's *also* labeling the employer-mandate exaction an "assessable payment" does not, in our view, qualify.

We are unconvinced also by the *Liberty University* court's reasoning that, in the light of *NFIB*, holding the AIA to bar suits challenging the employer mandate would create an "anomal[y]." *See Liberty Univ.*, 733 F.3d at 88–89. For one thing, because differential treatment of the individual and employer mandates is required by the statutory language, any anomaly is attributable to Congress and thus beyond our power to correct. *See, e.g., Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) ("When the statutory language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (internal quotation marks omitted)).

Regardless, we disagree that an anomaly would result from treating the individual and employer mandates differently under the AIA, because other provisions of the ACA appear to contemplate just that result. For instance, the employer-mandate exaction is enforceable by levies and by the filing of notices of liens, while the individual mandate is not. *Compare* 26 U.S.C. § 5000A(g) (providing that the individual-mandate penalty "shall be assessed and

collected in the same manner" as taxes, except that criminal penalties, liens, and levies may not be used) *with id.* § 4980H(d) (imposing no similar restrictions). Summary-enforcement tools such as these, which are available in enforcing the employer mandate but not the individual mandate, are "the very tools the Anti-Injunction Act was enacted to protect." *Thomas More Law Ctr.*, 651 F.3d at 540; *see also United States v. Am. Friends Service Comm.*, 419 U.S. 7, 12 (1974) (identifying one of the objectives of the AIA as "efficient and expeditious collection of taxes with a minimum of pre-enforcement judicial interference" (internal quotation marks omitted)). Furthermore, one subsection of § 4980H provides that the Secretary of the Treasury "shall prescribe rules . . . for the *repayment* of" any payment made under the employer mandate, if under certain circumstances the payment is later disallowed. 26 U.S.C. § 4980(d)(3) (emphasis added). This subsection—for which there is no comparable provision in § 5000A—seems to, as another court has noted, "assume[] that employers would raise their challenges" to exactions imposed under the employer mandate "in post-collection suits." *Halbig*, 27 F. Supp. 3d at 15. These provisions make it difficult to attribute Congress's description of the employer-mandate exaction as a "tax" to mere inadvertence.

Finally, in rejecting the *Liberty* court's "anomaly" rationale, we are mindful of the Supreme Court's repeated admonitions that "judicial administration of a jurisdictional statute" should be "as simple as possible." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010); *see also Direct Mktg. Ass'n v. Brohl*, 575 U.S. ___, ___ (2015) (slip op. at 9) (citing the Court's "rule favoring clear boundaries in the interpretation of jurisdictional statutes"); *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 321 (2005) (Thomas, J., concurring) ("Jurisdictional rules should be clear."). Our approach to the AIA—under which, generally speaking, an exaction is an AIA "tax" if Congress calls it such—accords with these admonitions. The *Liberty* court's approach—

under which Congress's designation of an exaction as a "tax" may be overridden by an amorphous, apparently policy-based inquiry into whether it would be "anomalous" to apply the AIA—does not.

\*    \*    \*

In sum, that the AIA bars suits challenging the employer mandate is, in our view, a necessary consequence of the Supreme Court's decision in *NFIB*. The *NFIB* Court observed that, because "[i]t is up to Congress whether to apply the Anti-Injunction Act to any particular statute, . . . it makes sense to be guided by Congress's choice of label on that question." *NFIB*, 132 S. Ct. at 2594. It therefore held that Congress's choice to label the individual mandate "as a 'penalty,' not a 'tax'," was "fatal to the application of the Anti-Injunction Act." *Id.* Here, the converse is true: Congress has chosen to label the employer mandate as a "tax," not a "penalty." Thus, "guided by Congress's choice of label," and finding no compelling evidence that Congress meant for the AIA *not* to apply, we hold that the plaintiffs' challenge to the employer mandate is barred by the AIA.

IV.

We recognize that the underlying merits of this appeal present issues of exceptional importance. Although the Origination Clause is rarely litigated, the principle it embodies—that "power over the purse" should be held by the most "immediate representatives of the people," *see* The Federalist No. 58, at 350 (James Madison) (Isaac Kramnick ed., 1987)—was critical to the Framers and ratifiers of the Constitution. Furthermore, the statute before us is, of course, a statute of great and wide-ranging importance: it represents a "comprehensive scheme to reform the national markets in health care delivery and health insurance," *Thomas More Law Ctr.*, 651 F.3d at 534, one that "encompass[es] nine Titles and hundreds of laws on a diverse array of subjects." *Florida,* 648 F.3d at 1241.

Nonetheless, it is axiomatic that, no matter how important the issue, *see, e.g., Raines*, 811 U.S. at 819–20, "[f]ederal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Here, as we have explained, constitutional and statutory limits combine to prevent our exercising jurisdiction over these plaintiffs' challenges. The Constitution's standing requirement bars Dr. Hotze's challenge to the individual mandate, primarily because the plaintiffs' complaint provides no reason to conclude that Dr. Hotze's circumstances do not fully comply with that mandate; consequently, he has not shown an injury to himself resulting from the ACA's enactment. And a statute with a well-established history—the AIA—bars Braidwood's challenge to the employer mandate, because the exaction imposed by the employer mandate constitutes a "tax" under the AIA, which may not be challenged through pre-enforcement suit. 26 U.S.C. § 7421(a).

Concluding that the district court lacked jurisdiction to entertain this suit, we VACATE the district court's judgment and REMAND this case to that court with instructions to dismiss the complaint for lack of jurisdiction.

VACATED and REMANDED.